## No. 8651.

## SUCCESSION OF JULIA A. LAMPTON.

An *ex parte* order of court recognising 'one as heir of a deceased person and putting her in possession of his succession, lacks the essential elements of the thing adjudged and cannot be pleaded as *res adjudicata*.

The record of a suit in another State is admissible in evidence to prove *rem ipsam*, but is inadmissible to establish the status of one, not a party thereto or privy. The judgment rendered in such suit is not conclusive on those who had no notice, either actual or constructive, of the proceedings, and who made no appearance therein.

The depositions of witnesses, relating to pedigree, taken in this State to be read in evidence in a suit in another State, can be used as evidence in a subsequent suit in this State between different parties, when it is admitted that the witnesses are dead, and the testimony is offered for the sole purpose of proving pedigree.

An *ex parte* order of court, such as hereinbefore described, is not such "title" as will enable the party who obtained it to plead the prescription of ten years under color of title against an attack of creditors of the deceased.

APPEAL from the Twenty-fourth District Court, Parish of Plaquemines. *Livaudais*, J.

*A. Lartigue* and *F. C. Zacharie* for the Tutor, Appellant.

*E. H. McCaleb* and *Miller, Finney & Miller* for the Opponents, Appellees.

The opinion of the Court was delivered by

MANNING, J. Mark Lampton, a resident citizen of Kentucky, bequeathed certain land in Louisville in that State to his son, Edward S. Lampton, and in the event of the son's dying without lawful issue of his body surviving, then the land was devised to the daughters of the testator. Edward Lampton sold these lands January 2, 1839, to J. B. Bland and W. F. Pettit, for fourteen thousand seven hundred and fifty dollars, with covenants of warranty and seizin, the deed expressing that his wife Elizabeth joined therein, and both signing it. They were residents of Plaquemine Parish in this State when this sale was made, and Bland and Pettit lived in Kentucky.

Edward Lampton died in Plaquemine Parish in May, 1865, and

shortly thereafter his widow Elizabeth and her daughter, styled Julia Ann Lampton, presented a petition to the proper court, praying to be put in possession of the decedent's estate as his sole heirs, the one claiming to be his widow and the other his only child, and an order was made recognising them as heirs and as such putting them in possession. These proceedings were *ex parte.*

In December, 1866, Fanny M. Crutchfield, a sister of Edward Lampton, instituted suit in Kentucky for the recovery of these lands, the defendants being one Stone and others who had acquired from Bland and Pettit, claiming absolute ownership for herself and sister under their father Mark Lampton's will, because their brother Edward had died without lawful issue. The Chancery Court of Louisville so decided, and Bland and Pettit's vendees were evicted, and on appeal the court declared the conclusion that Edward Lampton died leaving no issue to be irresistible, and that it was much more than questionable whether he was ever married. Stone vs. Crutchfield, 8 Bush, 647.

In 1878 R. T. Beauregard, at the instance of the evicted vendees, had himself appointed curator of Edward Lampton's succession, and instituted suit against Julia A. Lampton (her mother being dead) to recover the property the two took possession of under the *ex parte* order, which resulted in a decree of this Court rejecting his demand. Beauregard vs. Lampton, 33 Ann. 827.

On May 14, 1881, Julia Lampton died, having appointed Chas. W. Fox executor, and bequeathing her property to two children, Edward and Delka Henritzy, of whom Fox also qualified as tutor. Fox filed a provisional account, and the legal representatives of J. B. Bland and W. F. Pettit (both having died) opposed it, and claimed to be placed on it as creditors for $14,750 and interest, and $5,000 additional as damages for eviction from the land sold them by Edward Lampton. The opponents charge that Elizabeth Lampton and her daughter Julia rendered themselves liable for the debts of Edward Lampton when they obtained the order putting them in possession as widow and heir of his succession, and Julia is now solely and wholly responsible therefor, being heir of her deceased mother.

That is the important and interesting litigation now before us.

Fox, as executor, excepted to the opposition for not disclosing any cause of action in this:

1. That the opponents, by suing Julia Lampton's succession by virtue of her heirship of Edward Lampton, are estopped from pleading irregularity in the order of court giving her possession as heir, and can no longer contest her filiation.

2. That Julia remained in the unchallenged possession of Edward Lampton's estate, under and by virtue of an order of a court of compe-

tent jurisdiction, recognising her as his sole heir, from Dec. 11, 1866, for more than ten years continuously.

3. That her status as legitimate daughter and heir has been established by a competent court of her domicile, which judgment was rendered more than a year ago, and has never been attacked.

The pleas of *res judicata*, and one and ten years' prescription were consequently made, and an answer was filed, reserving these exceptions, and averring that neither Elizabeth nor Julia Lampton were parties or privies to the suit in Kentucky, nor had they any knowledge of such suit, and that the status of Julia as heir and legitimate daughter of Edward Lampton cannot be attacked by proceedings had in a foreign tribunal, to which she was not a party.

The *ex parte* order, recognising the mother and daughter as entitled to the estate and putting them in possession thereof, cannot form *res judicata* as to any one. It lacks the essential elements for such plea. It was made in a proceeding, not a suit in its legal sense. There were neither proper parties, nor issue joined. It was made without notice to any one, without proof, and without hearing. Baillio vs. Wilson, 8 Mart. N. S. 348; Suc. Durnford, 1 Ann. 92; Marchand vs. Gracie, 2 La. 147; Gillespie vs. Day, 14 La. 289; Verret vs. Aubert, 6 La. 353. The order is *prima facie* evidence of their capacities as widow and heir, but their recognition cannot preclude other heirs nor creditors from shewing the contrary. Glover vs. Doty, 1 Rob. 130. The transcript of the proceedings of the Plaquemine probate court in Edward S. Lampton's succession therefore prove *rem ipsam*, and nothing more. Remy vs. Municipality, 8 Ann. 27; Wells on *Res Adjudicata*, Sec. 14.

The admissibility in evidence of the record of the Kentucky suit, and the effect to be given to it, is a more serious question. The opponents contend it is admissible to prove eviction by title paramount, on the ground that in each State full faith and credit must be given to the judicial proceedings of every other State, and a number of common law authorities are cited to sustain the doctrine that an evicted vendee can use the record of the judgment of eviction as evidence that the recovery was upon title paramount.

It must be observed that not only were Elizabeth and Julia Lampton not parties to the Kentucky suit, but the judgment of eviction therein rests solely upon the determination of the latter's status. There could not have been a judgment of eviction unless Julia Lampton had been adjudged not to be Edward Lampton's legitimate child. The investigation of her parentage and legitimacy, and the judicial ascertaiment and declaration that she was not the issue of Edward Lampton,

begotten in lawful wedlock, was more than the pivot upon which the case turned. It was its only foundation.

. A judgment or decree is always evidence of the fact that such judgment or decree was rendered, and of the legal consequences of that fact, whoever were the parties to the suit in which it was rendered. Wells on Res Adjudicata, Sec. 354, citing Baylor vs. Dejarnette, 13 Gratt. 163; Barr vs. Gratz Heirs, 4 Wheat. 213; 1 Stark Ev. 18; 1 Greenl. Ev. Sec. 538. The record of the Kentucky suit, if admitted not only to prove that fact and its consequences, but the verity of another alleged fact that is the basis of the suit, would determine the status of Julia Lampton without notice to her or hearing. Neither our jurisprudence nor that of Kentucky sanction such doctrine, the consequences of which, if established, would be so far-reaching as to penetrate every avenue of social and business life. If the validity of one's marriage, the legitimacy of birth, and the title to one's property can be conclusively settled by the judgment of a court in a suit to which one is neither party nor privy, without actual or constructive notice or voluntary appearance, the foundations of the family and society would be shaken, and the rights of property imperilled. Happily no such consequences can follow the right application of the constitutional requirement to give full faith and credit to judicial proceedings in other States. Wells on Res Adjudicata, Sec. 519.

Kling vs. Sejour, 4 Ann. 129, is parallel with the case at bar in this: the defendants in New Orleans sold to the plaintiff a tract of land in Mississippi by the common law form of deed of bargain and sale with full warranty. The plaintiff alleged that since his possession a suit had been instituted against him, and judgment rendered against him. The action is based upon this judgment and eviction as a breach of the warranty, and it is even stated that Sejour was cited in warranty, and defended the suit by counsel. The Court say: Sejour was not made a party, there was no judgment against him. It is impossible to hold him bound by either the notice of the action of ejectment to his son, or this latter's employment of counsel. P. 133.

. In McNairy vs. Bell, 5 Rob. 418, it was held that without service of citation or appearance a judgment is *per se* of no effect, and due notice of the suit must have been given to a party to give the court jurisdiction of his person.

. The judgment of the Court of Kentucky has no greater force here than there. Neither the constitutional mandate nor the comity of States require that authenticated judgments from a State shall have greater force without its courts than within them.

· There are several cases cited from Marshall's and Bibb's Reports in the briefs, which we were unable to examine (those books having been

lost from the State library) wherein it is said it was decided that the record of a case, in which there was judgment of eviction, is not evidence of paramount title against one not a party to the suit, and all the parties were citizens of Kentucky. Gaither vs. Brooks, 1 Marsh. 304 ; Booker vs. Bell, 3 Bibb, 175.

Cobb vs. Haynes, 8 B. Monroe, 139, is cited on both sides, in which the facts are: John Haynes gave bond in Virginia as administrator of Scott's succession there with William Haynes and Cobb as sureties, and another bond with Milliner Haynes and another as sureties. Scott's heirs sued John Haynes and his sureties on the bonds in Virginia, and had judgment. Process was actually served upon all the defendants except William Haynes, and constructively upon him by publication. Cobb, one of the sureties, paid the judgment. Milliner Haynes had removed from Virginia to Kentucky during the progress of the suit, and Cobb instituted suit in Kentucky against him and William Haynes, who throughout was a resident of that State. The Court held that Wm. Haynes, having been a citizen of Kentucky when the suit was instituted and there being no actual service on him, but only constructive notice of the suit, the judgment of the Virginia Court was null as to him.

We are of opinion that the record of the suit in Kentucky, whereto Julia Lampton was neither party nor privy, is inadmissible to prove anything but the fact that such suit was instituted and prosecuted to judgment, which resulted in eviction of the defendants therein from the lands in question.

While the suit was in progress in Kentucky the depositions of many witnesses resident in Plaquemine Parish were taken for evidence in the cause. The opponents offer all this testimony in the case at bar, and its reception was objected to on the same ground as was made in the offer of the record just considered, because Julia Lampton was not a party and could not be affected thereby. The objection was good and must be sustained.

The opponents then offered the testimony of Mrs. Harris, given orally in open court in the suit of Beauregard, curator, vs. Lampton, which was objected to on the ground that the opponents are estopped by their pleadings from attacking the status of Julia Lampton.

The petition of the opponents is elaborately drafted, and sets forth all the proceedings had in this State and Kentucky. As to the former, it alleges that Elizabeth and Julia Lampton " were at their instance put in possession of the property belonging to Edward Lampton's succession under benefit of inventory, that is on their rendering themselves liable for the debts of the succession to the value of the property inventoried," and further on, that " they are entitled to recover from

the succession of Julia A. Lampton, who in her lifetime voluntarily assumed the responsibility of Edward S. Lampton," the sum of, etc.

The petition was doubtless drafted in view of what was said on this matter in the opinion of this Court read in deciding the appeal in the former case, as follows: " It does not even appear that the creditors, who provoked the new administration, ever even demanded payment from the beneficiary heir, who had expressly assumed the payment of succession debts to the extent of the value of the succession property. Conceding that she would have refused payment, she was open to suit by them in the ordinary tribunals, and as she remained in possession of the property, and as it is not made to appear that she had either alienated or encumbered it, we cannot perceive why this remedy was not perfectly effective. Her status as heir was a matter which creditors could in no case have any right or interest to contest. It was no concern of theirs, since their rights of payment were superior to the claim of any heir." Beauregard vs. Lampton, 33 Ann. 831.

The object in introducing this testimony was to shew that Julia Lampton was not the *child* of Edward Lampton. She had voluntarily assumed the position of his heir, had procured an order of court giving her possession of the property which was liable for this debt, and was the only person that could be sued for its recovery. To claim then, that since it was only as his child that she was recognised as heir, and that the opponents by suing her for Edward Lampton's debt admitted her filiation, is to construct a legal net-work too fragile for its purpose. The creditors of Edward Lampton sue her because of her voluntary assumption of responsibility for his debts, made in legal proceedings provoked by herself.

Another objection, that Julia Lampton was not a party to that suit also, is not considered in the brief of the party in whose behalf it was made, but it is untenable. The plaintiff in that suit is virtually the opponent here, and the defendant was Julia Lampton herself. The witness was absent and could not be procured. In such case, where there has been opportunity for cross-examination, the testimony may be used by either party. Hennen vs. Monro, 4 Mart. N. S. 449 ; Conway vs. Erwin, 1 Ann. 391. Perfect identity or mutuality of all the parties is not necessary in order to admit the testimony of an absent witness taken in a former suit. Clossman vs. Barbancey, 7 Rob. 438.

The lower Judge excluded the testimony. It should have been admitted. It is in the record as a part of a bill of exception. The witness explicitly states that she derived her information that Julia Lampton was not the child of Edward Lampton from the woman herself—that Julia Lampton had told her that her father's name was Rogers, and she was born before her mother's marriage with Edward

Lampton, or before their concubinage, if that was the relation between them. It is stated in the brief. Julia Lampton was actually present in court when this testimony was given. She was legally present. The suit was against her, and the main point to be established by the suit was precisely that on which this witness thus testified. She did not attempt to disprove it. She was a legal witness, and did not offer to testify. The weight of the testimony is immensely augmented by that fact. Whart. Ev., § 486; School Bd. vs. Trimble, 33 Ann. 1073; King vs. Atkins, Ibid. 1063.

The plea of prescription is opposed to the demand of the creditors in that Julia Lampton had been in possession of the estate more than ten years under color of title.

This suit is not for the recovery of an immovable, but of a debt, and for judgment for money. Even if it were, we do not think an *ex parte* order of court of the kind hereinbefore described is such title as is meant by the Code when fixing the term of prescription for immovables.

The Judge below admitted evidence which we have excluded, and excluded evidence which we have admitted, but we have reached the same conclusion. He gave judgment for fourteen thousand seven hundred and fifty dollars with five per cent. per annum interest from March 26, 1872, and costs.

The judgment is affirmed.

## On Rehearing.

We are satisfied that the rejection of the depositions of witnesses, taken in Plaquemine Parish and used in the Kentucky suit, was error. The record contains the admission that the witnesses are dead, and their testimony was offered for the sole purpose of proving pedigree.

The general rule is that depositions relating to pedigree, where reputation would be evidence, are admissible even against strangers. 1 Greenl. Ev. § 555. It is put in another form directly applicable to this case: a deposition of a witness since dead, proving the pedigree of a plaintiff, may be offered in evidence, although it was taken in another case between different persons and on a different subject. Weeks' Law of Depositions, § 477; Lessee of Barnet vs. Day, 3 Wash. Cir. C. Rep. 243.

The rule has been found so necessary that even the contents of *ex parte* affidavits to prove pedigree, made several years before, have been held admissible as hearsay, there being no evidence of any actual suit on the subject at that time. Hurst vs. Jones, 1 Wall. jr. 373; Colvert vs. Millstead, 5 Leigh, 88.

These depositions being admitted, the proof that Julia Lampton was not the child of Edward Lampton is so overwhelming as to be to all appearance incontrovertible.

It cannot be pretended the issue of filiation was not tendered in the pleadings. They speak for themselves, and without reciting the averments therein made by the plaintiffs, it is patent from those of the defendant that both were striking at the same object.

The executor repeats it at every stage of his defence. His first ground of exception is that the plaintiffs " can no longer contest her legitimacy,"—the second, that her undisturbed possession was under an order of court "recognising her as sole heir,"—the third, that her " status as legitimate daughter of Edward Lampton has been established by a competent court of her domicile which has never been impeached,"—and in the answer it is renewed, "that her status as daughter and heir of Edward S. Lampton cannot be attacked by proceedings in a foreign tribunal, to which she was not a party."

The issue was tendered and accepted, the defendant emphasising it with point. If we refuse to remand, and the defendant really has evidence which was not used because under the ruling of the lower court it was unnecessary, great injustice will be done, and an additional reason is suggested in the amount of the judgment which is claimed to be excessive, and beyond the value of the succession.

It is therefore ordered and decreed that our former judgment is set aside, the judgment of the lower court is avoided and annulled, and the case is remanded to be proceeded with in accordance with the rulings in this and our former opinion, the costs of appeal to await the final decision of the cause.