(113 So. 814)

No. 26808.

RAY et al. v. KNOX.

July 11, 1927.

*(Syllabus by Editorial Staff.)*

**1. Husband and wife ☞273(1)—Where second wife had no certain knowledge of first marriage, which was not dissolved, and husband predeceased wives, heirs of each wife are entitled to half community property (Rev. Civ. Code, art. 117).**

Where decedent had married and afterward contracted second marriage without first having been dissolved, second wife having no certain knowledge of existence of first marriage, heirs of each wife, who both died after husband's death, *held* entitled to half of community property, in view of Rev. Civ. Code, art. 117.

**2. Husband and wife ☞273(1)—One marrying without knowledge of husband's existing undissolved marriage held entitled to all rights of putative wife (Rev. Civ. Code, art. 117).**

Where man whose first marriage had not been dissolved married another, but second wife acted in good faith without knowing he was legally married, she was entitled to all rights of putative wife, under Rev. Civ. Code, art. 117.

**3. Marriage ☞37—Slave marriage held legal where parties lived together as man and wife after emancipation.**

Where slaves were married with consent of masters according to custom of slave marriages and after emancipation continued to live together as man and wife, during which time child was born and held out as legitimate child, there was legal marriage between such persons, giving child status of legitimate child.

**4. Husband and wife ☞273(1)—One marrying emancipated slave, who was living with another woman as man and wife, held not charged with certain knowledge of prior undissolved marriage.**

As respects rights as survivor, one marrying emancipated slave *held* not charged with certain knowledge of existing undissolved marriage of husband from mere circumstance that he was living with another woman as man and wife, in view of loose relationship of emancipated slaves during period immediately following Civil War.

164 LA.—7

**5. Husband and wife ☞273(1)—"Good faith" required in matters of putative marriages requires only that party contracting marriage should have no certain knowledge of any impediment thereto.**

"Good faith" required in matters of putative marriages has nothing to do with morals of parties, but requires only that party contracting such marriage should have no certain knowledge of any impediment thereto.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Faith.]

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Action by Wilson A. Ray and others against Willis Knox, Jr. Judgment for defendant, and plaintiffs appeal. Reversed and rendered.

Edward Barnett, of Shreveport, for appellants.

Dimick & Hamilton, of Shreveport, for appellee.

ST. PAUL, J. On May 7, 1887, Willis Knox, Sr., acquired a certain portion of land in the city of Shreveport, and the present controversy is over the ownership thereof.

### I.

Plaintiffs claim the whole thereof as collateral heirs of one Rachel Ray, alleging that said Rachel Ray was the *only* wife of said Willis Knox, Sr.; that said property was acquired during said marriage and formed part of the community of acquêts and gains existing between them (R. C. C. arts. 2402, 2405); that at the death of said Willis Knox, Sr., in the year 1920, said Rachel Ray became entitled of right to one-half of said property as widow in community (R. C. C. art. 2406) and *inherited* from her said husband his one-half of said community property, under the provisions of R. C. C. art. 915, as amended by Act 80 of 1916, p. 201; the said Willis Knox, Sr., having died intestate and leaving neither ascendants nor descendants, and she (Rachel Ray) being therefore entitled to inherit his

share of said community property as the survivor in said community.

Plaintiffs show that they are the brothers and sisters (and nephews and nieces) of said Rachel Ray; and though it is not made clear that they are *legitimate*, it is shown that she died intestate in 1922, leaving neither surviving husband nor ascendants nor descendants nor collateral relations other than these plaintiffs; and hence they are her sole heirs in either case, i. e., whether legitimate or only natural relations. · R. C. C. arts. 912, 923.

## II.

On the other hand, defendant claims that one Amelia Parker was the *only* wife of said Willis Knox, Sr.; that he is the (only) child of said marriage; that at the death of said Knox in 1920, one-half of said property belonged of right to his said mother as survivor in the community, and one-half thereof was inherited by him as sole heir of his said father; that at the death of his said mother in 1921 he then inherited her share in said property and thus became sole owner thereof.

## III.

[1, 2] Our conclusion is that plaintiffs are entitled, together, to *one-half* of said property as the heirs of Rachel Ray, their sister (and aunt), and that defendant is entitled to the other *one-half* thereof as sole heir of his mother Amelia Parker.

For we find the facts to be that Willis Knox, Sr., married both these women; first, Amelia Parker, and then Rachel Ray, whilst the said Amelia Parker was still living and undivorced from him; but that the said Rachel Ray, married him *in good faith*, i. e., without knowing that he was legally married to said Amelia Parker, and was therefore entitled to all the rights of a *putative wife*. R. C. C. art. 117.

And the rule was correctly laid down in Patton v. Philadelphia, 1 La. Ann. 98, and has ever since been followed, that where a man marries, and afterwards contracts a second marriage without the first having been dissolved, the community property acquired during the coexistence of said two marriages belongs exclusively and in equal shares to said two wives as long as the second wife is in good faith, i. e., as long as she has no *certain* knowledge of the existence of the first marriage, and the bigamous husband has no share whatever in said property. Cf. R. C. C. art. 117, supra.

## IV.

[3] As to the facts, the record shows that Willis Knox, Sr., and Amelia Parker were both slaves, but were married with the consent of their masters and according to the custom of *slave marriages* prevailing before the abolition of slavery; that after emancipation they continued to live together *as man and wife* for some years, during which time this defendant was born and was held out as their legitimate child. This was sufficient to constitute a legal marriage between these two persons and to give defendant the status of a legitimate child. Ross v. Ross, 34 La. Ann. 860.

On the other hand, the status of such connections remained long in doubt even before the courts. Cf. Johnson's Heirs v. Raphael, 117 La. 970, 42 So. 470. So that it is not to be presumed that an ignorant negro woman would be capable of drawing the fine distinction which the courts have sometimes been obliged to draw for the purpose of maintaining the validity of such marriages in the interest of the innocent offspring thereof; especially when we know and the evidence in this case shows that at the period immediately following the Civil War the newly emancipated slaves were not specially concerned over their marital status, but "took up with" and put off their companions with little or no attention to ceremony or formality of any kind.

[4] We are therefore not prepared to say that Rachel Ray might be charged with cer-

tain knowledge of a marriage between Willis Knox, Sr., and Amelia Parker from the mere circumstance that they were living together as "man and wife."

But the record leaves even this in doubt. The preponderance of the evidence is that at the time Rachel Ray first met Knox, he and Amelia had already separated, and that for more than a year after that separation he had lived with another woman by the name of Angeline, who was the immediate predecessor of Rachel in his affections; that it was this Angeline, and not Rachel, who brought about the separation between Knox and Amelia.

[5] Nor does it signify at all that Rachel lived in open concubinage with Knox for a number of years before she married him; which she did in 1882 before a duly qualified celebrant. For the "good faith" required in matters of *putative marriages* has nothing whatever to do with the morals of the putative wife or husband; that "good faith" requires only that the party contracting such marriage should have no certain knowledge of any impediment thereto. See Patton v. Philadelphia, supra.

### V.

The trial judge thought that the defendant was entitled to the whole property, and therefore rejected plaintiffs' demand as a whole. But we think differently, as above said, and must therefore reverse his judgment and allow plaintiffs jointly a half interest therein; the other half interest belonging to the defendant, Willis Knox, Jr.

### Decree.

The judgment appealed from is therefore reversed; and it is now ordered that Wilson A. Ray, Annie Ray Wells, Nancy Ray Haynes, James Ray, William Ray, Raz Ray, and Lizzie Ray Wilkins (each for an undivided eighth) and Nancy Pugh Humphrey, Annie Pugh Hamilton, Mary Pugh Harris, Joe Pugh, and Henry Pugh (each for an undivided fifth of an undivided eighth) be and they are hereby recognized as joint owners of *an undivided half* of the following described property, to wit:

A portion of lot 1 of 10-acre lot 12 of the city of Shreveport, Caddo parish, La., which said lot 1 contains 1 rood and 20 perches; said lot having been acquired by J. L. Hargrove from the heirs of Louis Encore, as per act of sale recorded at page 251 of Book Y, Conveyance Records of Caddo parish, La., as per map of said lot recorded at page 16 of Book V of said Conveyance Records; the portion of said lot above referred to being described as follows:

Commencing at the northeast corner of said lot 1, running southwesterly along said Williams street 40 feet, thence at right angle to said Williams street in a southeasterly direction 150 feet, thence on a line parallel to Williams street in a northeasterly direction 40 feet, thence northwesterly on a line parallel with the second boundary mentioned 150 feet to the point of beginning, together with all buildings and improvements; being the property acquired by Willis Knox from J. L. Hargrove, May 7, 1887, as per deed recorded at page 375 of Book 4 of Conveyance Records of Caddo parish.

It is further ordered that defendant, Willis Knox, Jr., be recognized as owner of the other undivided half of said property, and that all costs of these proceedings be paid by said defendant.