101 So.2d 222 (1958)
The TEXAS COMPANY
v.
Albert STEWART et al.
No. 20645.
Court of Appeal of Louisiana, Orleans.
March 3, 1958.
Rehearings Denied March 31, 1958.
Writs of Certiorari Denied May 26, 1958.
*223 Midlo & Lehmann, New Orleans, for Dorothy Leona Diggs, appellant.
Louise L. Burton, New Orleans, for Albert Stewart, appellant.
Duke, Porterie & Davison and James J. Tracy, New Orleans, attorneys, and Charles LaGarde, Luling, curator ad hoc, for heirs of Rosa Sumler, appellants.
*224 Richard S. Lake, New Orleans, and Wiley G. Lastrapes, Baton Rouge, for Texas Co., appellee.
Pierre D. Olivier, Jr., and Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, and Charles M. Lanier, New Orleans, for heirs of Howard Stewart, appellees.
McBRIDE, Judge.
This concursus proceeding was filed May 24, 1944, by The Texas Company pursuant to Act 123 of 1922 (now LSA-R.S. 13:4811 et seq.). Said company owns the lessee's rights in and to an oil, gas and mineral lease which bears against Lot 124 of the Ranson Tract of the Coteau de France, situated in Section 39, Township 14 South, Range 20 East, Parish of St. Charles, which is a part of the property comprising Drilling Unit No. 260 of the Paradis Oil Field. The oil, gas and mineral lease in question was granted by Albert Stewart, as lessor, unto the assignor of The Texas Company, and is recorded in Conveyance Book OO folio 3, Parish of St. Charles, being part of the Unitization Operating Agreement, the whole of which is recorded in the office of the Clerk of Court, Parish of St. Charles, Entry No. 1256, Conveyance Book SS, folio 1, et seq. The petition alleges that The Texas Company has in its possession $1,100.28 representing the proceeds of the sale of the lessors' one-eighth of the crude oil allocated to said Lot 124 out of the oil produced from Drilling Unit 260; that numerous persons (whose names are set forth) are claiming the ownership of an interest in the proceeds arising from petitioner's purchase of said one-eighth of the oil, but that the claims of some of said parties as against others are not definite and determined and appear to be adverse; that in view of this, petitioner is unable to distribute said funds as amongst the conflicting claimants. The Texas Company prayed that the persons named in the petition be cited to appear and answer and make claim to the said funds (and also future accruals thereto) and for the taxation of the costs of the proceedings against the mass.
An order was rendered by the lower court authorizing the depositing of the funds, together with future accruals thereto, in the registry of the court. Curators ad hoc were appointed to represent certain of the claimants who are absentees.
For the sake of brevity and convenience, the persons impleaded in the suit (some of whom have since died and in whose place their heirs have been made parties) may be denominated thus:
(1) Albert Stewart, named titular defendant and possessor of the property at the commencement of the suit;
(2) The heirs of W. H. Tinney who claim to be owners of one-half of the property;
(3) Dorothy Diggs, daughter of Amanda Bailer and Alexander Henry, the alleged granddaughter of Howard Stewart, and her assignee, Herman L. Midlo;
(4) Collateral heirs of Amanda Bailer, first wife of Howard Stewart;
(5) Collateral heirs of Rosa, or Rosie Sumler, second wife of Howard Stewart (including James J. Tracy and heirs of B. Esma Neuhauser);
(6) Collateral heirs of Howard Stewart.
Answers were filed by some of the defendants, either through their attorneys or curators ad hoc, in which is asserted the nature of their respective claims to the funds; others of the defendants failed to answer and preliminary defaults were ultimately entered against these.
After a lengthy trial (the transcript before us consisting of four volumes and more than 1300 pages), the lower court held *225 that Howard Stewart was the sole owner of the property at his death and rendered a judgment recognizing his collateral kin named in the suit as his heirs and sending them into possession of the property, and as such entitled to the funds on deposit in the registry of the court; all other claims were rejected; the preliminary defaults against those who had failed to answer were confirmed; and the costs of the proceedings were ordered to be paid out of the mass on deposit in the registry of the court.
Appeals were taken from the judgment by (1) Albert Stewart, (2) Dorothy Diggs, (3) collateral heirs of Rosa Sumler, including the heirs of B. Esma Neuhauser, an assignee of Rosa Sumler's heirs (two appeals, one perfected by the attorneys for some of these heirs and the other being perfected by the curator ad hoc for others).
At the outset appellants point out that the judgment sets forth an erroneous description of the property which is the subject of the above-mentioned oil, gas and mineral lease. Properly described the property is:
A Certain Lot Or Parcel Of Ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, advantages and appurtenances thereunto belonging or in anywise appertaining, situated in the Parish of St. Charles, State of Louisiana, being a part of the Ranson Tract, in Section 39, Township 14 South, Range 20 East, Southeastern District of Louisiana, West of the Mississippi River, according to which said Lot is designated as Lot No. 124 of the Coteau de France in accordance with a survey attached to Order No. 37 of the Department of Conservation of the State of Louisiana, the survey being dated February 10, 1941, and bearing the No. 5294, which said unitization order and survey have been recorded in the Clerk of Court's Office, Parish of St. Charles, August 1, 1947, Entry No. 1256, Conveyance Book SS, folio 1, et seq. and according to which survey the property contains 8.09 acres and is bounded on the East by the Southern Pacific Railway, on the North by Lot 126 and on the South by Lot 122, and on the West by a line which is common to the Western boundary of Lots 122 and 126.
Being the same property acquired by Howard Stewart from Mrs. Rosa Friedman, widow of W. H. Tinney, by act before Ralph Allain Dubroca, Clerk of Court and Ex-Officio Notary Public, Parish of St. Charles, on the 11th day of May, 1914, which said act is registered in the Conveyance Office of the Parish of St. Charles, Conveyance Book S, folio 24 and according to which act the property was described as follows:
A certain piece or portion of ground being a part of a tract of land known as "The Couteau de France" situated on the line of the New Orleans and Opelousas between the Bayou Saut d'Ours and the Bayou des Allemands in the Parish of St. Charles in this State as per plan of division made by L. J. Fremeaux, Surveyor, on the 6th of February, 1869, a lithographic copy whereof is annexed to an act of sale from J. A. Latour to C. L. Hopkins, said portion of land is designated by the No. 124 on said plan and measures one arpent front on the South side of the said Railroad by about eight and one-half arpents in depth more or less between parallel lines, which lot is bounded above by the property of Louis Branch and below by that of Jeff Harper.
When Howard Stewart acquired the property on May 11, 1914, he declared he was "husband of Rosie Sumler, who is now living with him." But the truth of the matter is that Howard Stewart had two living wives; Rosa, or Rosie, Sumler was the second of these and his marriage to her had been entered into without the formality *226 of a divorce from the first wife. The record contains competent documentary evidence to the effect that Howard Stewart first married Amanda Bailer on September 30, 1884; no children were born to them, and it appears that within a year or so after the marriage ceremony, Stewart abandoned Amanda. There is no evidence of a divorce ever having been granted to either of them, and there was no showing by any of the interested parties that there ever was a judicial dissolution of the marriage. Amanda Bailer died on December 22, 1928, leaving neither descendants nor ascendants.
The record contains competent documentary evidence showing that Howard Stewart went through a marriage ceremony with Rosa Sumler on April 27, 1901, and lived with her as man and wife until her death on December 4, 1933, and that he buried her as his wife. Rosa Sumler had no children and left no ascendants.
Howard Stewart lived until October 13, 1936, his mother and father having predeceased him.
Appellant Albert Stewart maintains that Howard Stewart had been married not twice but three times, and that his second wife was Louisa Payne, whom he married in 1886 or 1887. He represents himself as the only child of Louisa Payne by Howard Stewart and an issue of their marriage. According to his testimony, his mother, Louisa Payne, died about the year 1892.
Some three years after the death of Howard Stewart in 1936, Albert Stewart, as lessor, entered into the oil, gas and mineral lease of which The Texas Company is the assignee of the lessee. During 1940 Albert Stewart petitioned the Twenty-fourth Judicial District Court for the Parish of St. Charles, in the proceedings entitled: Succession of Rosie Sumler, wife of and Howard Stewart, Docket No. 2737, alleging that he is the only child and heir at law of Howard Stewart, issue of his marriage with Louisa Payne; that subsequent to the death of Louisa Payne, his father married Rosie Sumler, from which marriage there was no issue; that during this marriage certain property (that above described) was acquired by Howard Stewart which fell into the community existing between them; that upon the death of Rosa Sumler in 1933, in default of her having left forced heirs, Howard Stewart inherited her community one-half in the property; that Howard Stewart died October 13, 1936, and, therefore, as he had no other children, his estate devolves upon Albert Stewart as sole heir at law. A prayer was made for his recognition as child of the decedent and as sole heir at law and for possession of the property left by the decedent; an ex parte judgment was rendered in accordance with this prayer.
The trial judge rejected Albert Stewart's claim because he did not believe that Howard Stewart had ever married claimant's mother, Louisa Payne.
Pretermitting any question whether Howard Stewart could have legally contracted marriage with Louisa Payne, in view of the positive fact he was already married to and undivorced from Amanda Bailer, our views accord with the trial judge that there is no evidence showing that Albert Stewart's mother was ever the wife of Howard Stewart. No documentary evidence was offered to prove the marriage, and the only testimony adduced and relied upon by Albert Stewart emanated from Warren Thomas, a man 84 years of age, who says he witnessed the ceremony while he was the recording secretary of a church then located on Melpomene Street in New Orleans. The witness stated that on a Sunday afternoon either in 1886 or 1887 at 3 o'clock Howard Stewart and Louisa Payne came to the church and were married by Rev. John *227 Brown, and that he recorded the fact in the church record which he says was destroyed about 40 years ago in a fire which burned the building. Thomas while professing he knew Howard Stewart and Louisa Payne "by sight," at the same time admitted he had never seen either of them before or after the wedding. It is obvious that Thomas exhibited a superabundance of zeal in giving his testimony, and his recollection of certain minor details would appear altogether too vivid to make an impression on the judicial mind. He even went so far as to identify a photograph of Howard Stewart and said it was the same man Rev. Brown married on that Sunday afternoon 60 years before. At best the testimony could not be viewed favorably in the light of other circumstances in the case, which need not be detailed here.
The rendition of the ex parte judgment of possession in the mortuary proceedings of Howard Stewart in the Parish of St. Charles does not strengthen Albert Stewart's position in the least. An ex parte judgment sending an heir into possession of an estate cannot from the basis for a plea of res judicata or be conclusive against anyone having an adverse interest in or a claim against the estate. Such a judgment is only prima facie evidence of the right and capacity of the heir in whose favor it was rendered, but his recognition cannot preclude other heirs or creditors from making a contrary showing. Succession of Fachan, 179 La. 333, 154 So. 15; Taylor v. Williams, 162 La. 92, 110 So. 100; Succession of Lampton, 35 La.Ann. 418.
The claim of Dorothy Diggs, to which we now turn for consideration, was denied by the trial judge without comment.
Seven years after Howard Stewart left Amanda Bailer, the latter went through a marriage ceremony in New Orleans with a man named Alexander Henry on August 25, 1891, and from this bigamous union a child, Leona Henry, was born. Leona Henry married James Diggs July 11, 1917, and Dorothy Diggs, the present claimant, was their sole issue. She claims that by fiction of law her mother, Leona Henry, must be considered as the child of Howard Stewart, and that upon his death she, Dorothy Diggs, was called to his succession as sole heir in representation of her predeceased mother.
Dorothy Diggs, notwithstanding that she judicially admitted herself to be the child of Amanda Bailer's bigamous marriage with Alexander Henry, and notwithstanding the clear proof in the record that she was a bigamous child, now contends that whereas Leona Henry was born to Amanda Bailer during the existence of her prior and legal marriage with Howard Stewart, it must be presumed juris et de jure that Leona Henry was the lawful issue of that marriage. We are cited to LSA-C.C. art. 184, which provides that the law considers the husband of the mother as the father of all children conceived during the marriage, and to LSAC.C. art. 191, which contains provisions to the effect that where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of the child, must do it within one month if he be in the place where the child was born, or within two months after his return if he be absent at that time. The argument is made that Howard Stewart never formally disputed Leona Henry's paternity during his lifetime, and that it is now too late for his heirs to challenge the status of Leona Henry as the child of Howard Stewart.
We agree that the policy of the courts has been to regard the presumption of legitimate filiation as one of the strongest known to the law, and this applies with peculiar force in favor of the child who is asserting its legitimacy. Cameron v. Rowland, 208 La. 663, 23 So.2d 283, 285.
However, under the facts and circumstances surrounding the marriage of Alexander Henry with Amanda Bailer, the *228 presumption established by LSA-C.C. art. 184 cannot be invoked in connection with Dorothy Diggs' claim that Leona Henry must be considered the legitimate child of Howard Stewart.
It was never intimated during the course of the trial that Alexander Henry, the father of Dorothy Diggs, ever had any certain knowledge that Amanda Bailer had a living and undivorced husband or that there was any impediment to a marriage with her. Neither Dorothy Diggs, nor anyone else connected with this case, charged him with possession of knowledge that there was any impediment to his marriage or with bad faith, and if in fact Alexander Henry did possess such knowledge or was not in good faith, evidence of these facts should have been brought forth at the trial of the case. The burden of establishing bad faith rests on those alleging it. Succession of Chavis, 211 La. 313, 29 So.2d 860.
LSA-C.C. art. 117 provides:
"The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
LSA-C.C. art. 118 contains these provisions:
"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."
The good faith required in matters of putative marriages requires only that the party contracting such marriage should have no certain knowledge of any impediment thereto. Prince v. Hopson, 230 La. 575, 89 So.2d 128; Succession of Marinoni, 183 La. 776, 164 So. 797; Ray v. Knox, 164 La. 193, 113 So. 814; Succession of Thomas, 144 La. 25, 80 So. 186; Patton v. Cities of Philadelphia & New Orleans, 1 La.Ann. 98; Dillon v. Traders & General Ins. Co., La.App., 183 So. 553; Fulton Bag & Cotton Mills v. Fernandez, La.App., 159 So. 339; Penn v. Jones, 5 La.App. 371.
The courts have been liberal in construing the good faith of a party who contracts the marriage without knowing that the other had a living and undivorced spouse. Dillon v. Traders & General Ins. Co., supra, and cases there cited.
The marriage, though a nullity because Amanda Bailer had another husband living, constituted a putative marriage and had all of its civil effects as to the putative husband who acted in good faith, and one of those effects is that the child of the marriage, Leona Henry, is his legitimate offspring. Miller v. Wiggins, 149 La. 720, 90 So. 109; Succession of Navarro, 24 La. Ann. 298. Dorothy Diggs is not the grandchild of Howard Stewart, has no interest in his estate, and her claim was properly dismissed.
The trial judge held that sole ownership of the property was vested in Howard Stewart when he died on October 13, 1936. The judge reasoned that whereas Amanda Bailer "was a bigamist, as well as an adulterous wife," she forfeited whatever interest she may have had in any property belonging to the community of acquets and gains existing between Howard Stewart and herself "and if she did not lose that community by her omissions and commissions, she having predeceased Howard Stewart, he as surviving spouse would inherit whatever interest she might have had in the community of acquets and gains, to the exclusion of the above claimants, because they admit by their own solemn Judicial Declaration that Amanda died without legitimate issue, * * *."
The reasons for judgment also state that the trial judge's opinion was that whereas *229 Rosa Sumler predeceased Howard Stewart without leaving descendants or ascendants, Howard Stewart, as her surviving spouse in community, was entitled at her death as a matter of right to his own one-half community interest in all community property as well as to her share thereof.
The conclusion that Howard Stewart owned the whole of the property was erroneous.
There is no evidence in the record even remotely tending to show that Rosa Sumler was not in good faith when entering into marriage with Howard Stewart. Nothing indicates that she did not have an honest and reasonable belief that the marriage was valid and that there was no legal impediment thereto. All that we have said above with respect to the status of Alexander Henry applies with reference to Rosa Sumler and good faith on her part must be presumed. In the eyes of the law she is to be considered a putative wife, and insofar as it relates to her the marriage carried all of its civil effects.
This case gives rise to the interesting point: What were the respective interests of Howard Stewart and his two wives in the property when he acquired it? He declared in his act of purchase that he was the husband of Rosa Sumler, but besides this putative wife, he had his legal wife, Amanda Bailer, who was also alive. We find that it has been held by our Supreme Court that in such circumstances property acquired during the coexistence of the two marriages belongs exclusively and in equal proportions to the two wives, and the bigamous husband would have no share whatever in the property.
It was said in Ray v. Knox, 164 La. 193, 113 So. 814, 815:
"And the rule was correctly laid down in Patton v. [Cities of] Philadelphia [& New Orleans], 1 La. Ann. 98, and has ever since been followed, that where a man marries, and afterwards contracts a second marriage, without the first having been dissolved, the community property acquired during the coexistence of said two marriages belongs exclusively and in equal shares to said two wives as long as the second wife is in good faith, i. e., as long as she has no certain knowledge of the existence of the first marriage, and the bigamous husband has no share whatever in said property. Cf. LSA-C.C. art. 117, supra."
See, also, Succession of Fields, 222 La. 310, 62 So.2d 495.
Although both Howard Stewart and Amanda Bailer were subsequently guilty of bigamy, nevertheless the community of acquets and gains existing between them by virtue of their legal marriage to each other remained unimpaired and in full force and effect, and we do not think that the law denied to either the community rights and privileges flowing from their marriage. When Amanda Bailer died intestate on December 22, 1928, Howard Stewart, under the plain provisions of LSA-C.C. art. 915, as her surviving spouse in community, inherited her one-half community share in the property. The article reads in part:
"When either husband or wife shall die, leaving neither a father nor mother nor descendants, and without having disposed by last will and testament of his or her share of the community property, such undisposed of share shall be inherited by the surviving spouse in full ownership. * * *"
Upon the death of Howard Stewart on October 13, 1936, his share and interest passed to his collateral heirs.
*230 Rosa Sumler, the putative wife, died intestate on December 4, 1933, and the trial judge thought Howard Stewart inherited her community one-half interest in the property under the provisions of LSA-C.C. art. 915, and he therefore denied the claims of Rosa Sumler's collateral heirs. Howard Stewart entered into the bigamous and adulterous connection with Rosa Sumler well knowing that he was incapable of contracting a lawful marriage with her, and the fact that Rosa Sumler died during the tenure of this illegal marriage cannot give it, as to Howard Stewart, the character of being legal which it did not have when it was first contracted. Under this state of affairs the marriage as to Howard Stewart produced no civil effects whatever, and he was incapable of inheriting Rosa Sumler's interest in the community as her surviving spouse. Succession of Llula, 44 La.Ann. 61, 10 So. 406. The deceased putative wife's one-half share in the property devolved upon her legal heirs who, together with the heirs of their deceased assignee, are before the court as appellants in this case.
The appellees, the collateral heirs of Howard Stewart, filed a special plea of laches against the heirs of Rosa Sumler, the basis of which is that as the Sumler heirs remained inactive and did nothing to assert their claim to an interest in the property, this inaction has deprived appellees of the benefit of the testimony of Howard Stewart who would have been in position to testify whether he was divorced from Amanda Bailer and whether he in good faith thought himself free to marry Rosa Sumler.
LSA-C.C. art. 3548 provides:
"All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years."
We know of no law which would penalize Rosa Sumler's heirs for not having taken steps to have themselves declared owners of the property until after the death of Howard Stewart. It seems to us that the only staleness of the claim that could possibly defeat the Sumler heirs would result from their permitting their right to the estate to become prescribed under said codal article. The plea of laches cannot be sustained.
We have concluded that the property covered by the oil lease is owned by the heirs of Howard Stewart and the heirs of Rosa Sumler in the proportion of an undivided one-half to the former and an undivided one-half to the latter, and, as a corollary, the funds on deposit in the registry of the court in these proceedings belong to and should be distributed among said parties in their just proportions. But the principal difficulty in the case is to determine who are the heirs of Howard Stewart and the heirs of Rosa Sumler (including the heirs of B. Esma Neuhauser, deceased, their assignee). Several of the original parties impleaded in the suit have departed this life since the institution thereof, and their alleged legal heirs and representatives have been substituted in their place on affidavits setting forth the death and heirship, and some of these substituted parties, we think, are also now deceased. No effort was ever made to show when B. Esma Neuhauser, assignee of the Sumler heirs, died and who are entitled to inherit her estate. It must be noted that the affidavits presented with the motions to substitute parties in some instances do not recite that the decedents died intestate, nor do the affidavits negative the existence of adopted children. All in all, the record is unsatisfactory and indefinite, and it would be impossible to say what persons are entitled to the funds in the registry of the court, and more especially we could not possibly determine the proportions due each except at the risk of serious error. We feel secure in the firm belief that this is a proper *231 case for remand to the trial court for the sole purpose of ascertaining the proper persons entitled to participate in the funds and their respective proportions.
It is ordered, adjudged and decreed that the judgment appealed from, insofar as it recognizes Ida Gayles Guff August, Solomon Johnson, Amanda Smith and Helen Simmons Stokes, in their capacities of sole and only heirs at law of Howard Stewart and sends them in possession in and to all of the property, both real and personal, left by said Howard Stewart and belonging to his estate, and more particularly of the real estate described in said judgment, together with any and all fruits and revenues derived from said property, and insofar as it recognizes Ida Gayles Guff August, Solomon Johnson, Amanda Smith and Helen Simmons Stokes entitled to the sum of $1,100.28 on deposit in the registry of the court, as well as all future money or moneys that may be derived from the fruits and revenues of said property, be and the same is hereby reversed.
It is further ordered, adjudged and decreed that the judgment, insofar as it rejects and dismisses the claims of the heirs of Rosa Sumler (including the claims of the heirs of B. Esma Neuhauser, deceased, their assignee), be and the same is also reversed.
It is ordered, adjudged and decreed that the judgment be amended so as to decree that as owners of Lot 124 of the Ranson Tract of the Coteau de France, situated in Section 39, Township 14 South, Range 20 East, Parish of St. Charles (fully above described), the heirs of Howard Stewart and the heirs of Rosa Sumler (including the heirs of B. Esma Neuhauser, deceased, their assignee) be recognized as entitled to the funds deposited in the registry of the court by The Texas Company, together with all future accruals thereto, in the proportions of one-half thereof to Howard Stewart's heirs and one-half thereof to Rosa Sumler's heirs (including the heirs of B. Esma Neuhauser, deceased, their assignee); and as thus amended and in all other respects, the judgment appealed from is affirmed.
It is further ordered, adjudged and decreed that this cause be remanded to the district court for a proper determination of who are the heirs of Howard Stewart and the heirs of Rosa Sumler (including the heirs of B. Esma Neuhauser, deceased, assignee) and in what proportions they are to participate in the funds, and the trial judge, after due proceedings not inconsistent herewith, is authorized to order a proper distribution of the funds and to render such other orders as the exigencies of the case warrant.
It is further ordered, adjudged and decreed that all costs, including the costs on appeal, of all parties, plaintiffs, defendants, intervenors or otherwise, to the suit shall be paid out of the funds deposited, with preference and priority over any and all persons.
Reversed in part; amended and affirmed in part; remanded.