173 So.2d 857 (1965)
Succession of George W. JENE.
No. 1632.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1965.
*859 Ivor A. Trapolin, New Orleans, for plaintiff-appellee.
T. M. McBride, III, Arabia, for defendants-appellants.
Before McBRIDE, SAMUEL and HALL, JJ.
SAMUEL, Judge.
The decedent, George W. Jene, contracted two legal marriages and one alleged putative marriage during his lifetime. The first legal marriage was entered into on September 8, 1930 and ended in divorce on March 5, 1943. The second valid marriage took place on March 12, 1943 and Jene lived with that wife until his death. Two children were born of the first marriage and none of the second. The alleged putative marriage took place on September 6, 1931 and the wife of that marriage gave birth to a son the same day, shortly after the ceremony had been performed.
Jene died testate in the City of New Orleans, his domicile, on June 30, 1963. This succession proceeding was opened on the petitions of his widow of the second valid marriage and his two daughters of the first and there was judgment placing those three persons in possession of decedent's estate. Shortly thereafter the son of the alleged putative marriage filed a petition against the aforesaid widow and two daughters to annul the judgment of possession. The defendants answered averring that, if a marriage ceremony was performed between Jene and petitioner's mother, it was done under duress and threats of violence and at the time of the ceremony petitioner's mother knew Jene was married. After trial judgment was rendered recalling and setting aside the prior judgment of possession, declaring petitioner to be a putative child and forced heir of the decedent, and putting petitioner in possession of his legitime. The three defendants have appealed therefrom.
The record, which contains documentary evidence and the testimony of petitioner's mother, her sister, her brother and the midwife who delivered petitioner, reveals the following facts:
On October 11, 1939 Jene filed suit against petitioner's mother in the Civil District Court for the Parish of Orleans seeking an annulment of their marriage and alleging he had been forced into the marriage by misrepresentation, fraud and the threat of death. Petitioner's mother answered, denying the contentions relative to duress, and reconvened for an annulment on the ground of Jene's preexisting marriage under allegations to the effect that she had no knowledge of that marriage until the filing of the suit for annulment. After trial judgment was rendered on May 28, 1940 in favor of petitioner's mother annulling the marriage. There was no appeal from the judgment and on various occasions during petitioner's childhood Jene was forced to contribute to the boy's support by juvenile court action.
Although there are some minor inconsistencies therein, the testimony of all of the witnesses is to the following effect: On the day of the marriage petitioner's mother was at her home in New Orleans where she lived with her parents and other members of her immediate family. Her pregnancy had only very recently been made known to her family; she was about to give birth to the child and a midwife was in attendance. Two of her brothers located Jene who voluntarily came with them to the home. The marriage ceremony was performed *860 there in the presence, among others, of the midwife. No violence or threats were used or made by anyone and Jene went through the ceremony freely and without protest. The ceremony was performed by a Catholic priest. The marriage license had been obtained in the Parish of St. Bernard. Jene left after the ceremony and never returned. Petitioner was born shortly after the marriage ceremony had been completed.
In addition, petitioner's mother testified she had known Jene for eight years during which time they had seen each other several times a week; her family did not know of the relationship; the baby was born 15 or 20 minutes after completion of the ceremony; and, although her home was only nine blocks away from Jene's home, she did not know Jene was married until he filed suit for annulment in 1939.
It is clear that at the time petitioner was conceived Jene, who then was married to a woman other than petitioner's mother, was incapable of entering into another marriage. However, petitioner's claim is based upon LSA-Civil Code Article 118 providing that a marriage which has been declared null nevertheless produces its civil effects in favor of the children born "of the marriage" if it has been contracted in good faith by one of the parties thereto. Defendants contend the marriage is not putative because: (1) the decedent was coerced into going through the wedding ceremony; (2) petitioner's mother was not in good faith; and (3) the marriage license was issued in a parish other than that in which the marriage was celebrated. Defendants also contend that, even if the marriage was putative, petitioner cannot be a forced heir of the decedent because he was conceived before the marriage. We do not agree with any of the contentions.
The simple answer to the first, that decedent was coerced into going through the marriage ceremony, is that the defendants cannot raise the issue. Jene died many years after the ceremony and the right to contest the validity of a marriage on the grounds of lack of consent is strictly personal to the contracting parties and does not pass to their heirs. LSA-C.C. Art. 110; Ducasse's Heirs v. Ducasse, 120 La. 731, 45 So. 565.
The "good faith" required by Civil Code Article 118 is only that the party should have no certain knowledge of any impediment to the marriage and should have an honest and reasonable belief that the marriage was valid and that no legal impediment existed at the time of its confection. Succession of Fields, 222 La. 310, 62 So.2d 495; Succession of Pigg, 228 La. 799, 84 So.2d 196; Texas Company v. Stewart, La.App., 101 So.2d 222, and cases cited therein.
The relationship between Jene and petitioner's mother prior to the performance of their marriage ceremony has no bearing on her good faith. Our jurisprudence is that the putative quality of a marriage is not affected by the fact that the contracting parties have lived together in concubinage prior to the marriage; and here there was no concubinage. Succession of Piggs, supra; Hondlenk v. John, 178 La. 510, 152 So. 67; Ray v. Knox, 164 La. 193, 113 So. 814.
There is a presumption of good faith in favor of the party without the legal impediment in an alleged putative marriage. Succession of Pigg, supra; Succession of Fields, supra; Succession of Chavis, 211 La. 313, 29 So.2d 860; Succession of Navarro, 24 La.Ann. 298. Defendants' reliance upon two recent cases, King v. McCoy Brothers Lumber Company, La.App., 147 So.2d 77, and Succession of Davis, La. App., 142 So.2d 481, is not well founded; those cases make no attempt to change the rule. Both hold that the alleged putative widow therein had not sustained the burden of proving she was in good faith. However, in each case the widow had two undissolved marriages at the time she contracted the alleged putative marriage. And *861 in both cases the court distinguished between the situation where the party with the impediment is claiming to be a putative spouse and that in which the party without the impediment is making that claim. In the former the alleged putative spouse has the burden of proving his good faith, while in the latter the one attacking the marriage has the burden of proving the absence of good faith.
In some respects the testimony of the witnesses in the instant case is unusual and inconsistent. But, unless we resort to conjecture, the record contains no evidence at all that petitioner's mother had any knowledge, or any reason to know, of Jene's preexisting marriage. The trial judge concluded she was in good faith and we agree with that conclusion. In any event, defendants have not sustained their burden of proof.
The next contention, that the marriage was not putative because the license under which the ceremony was performed was issued in a parish other than that in which the celebration took place, is based on LSA-Civil Code Article 104. That article prohibits any minister or other person from celebrating a marriage unless the same is done under the authority of a special license to him directed and issued in the parish wherein the marriage is to be celebrated.
Defendants are correct to the extent that there was a violation of the article. The marriage in question was celebrated in the Parish of Orleans and the license therefor was issued in the Parish of St. Bernard. But this violation would not have the effect of invalidating an otherwise legal marriage and therefore cannot affect the validity of an otherwise putative one. Our jurisprudence is that the requirement of a special license by the celebrant under Article 104 is only directory to the celebrant and a marriage which has been otherwise duly contracted and solemnized is not null for want of such a license. State v. Trull, 147 La. 444, 85 So. 70; Sabalot v. Populus, 31 La.Ann. 854; Succession of Fortier, 51 La.Ann. 1562, 26 So. 554; Holmes v. Holmes, 6 La. 463. We conclude there was a putative marriage between petitioner's mother and the decedent.
Defendants rely on LSA-Civil Code Article 198 as supporting their final contention, that petitioner cannot be a forced heir of the decedent because he was conceived before the putative marriage. Prior to 1944 that article provided that "children born out of marriage", except those born from an incestuous or adulterous connection, could be legitimated by the subsequent marriage of their father and mother whenever the latter had legally acknowledged them. The article was amended by Act 50 of 1944 and Act 482 of 1948 so that it now provides for informal acknowledgment and does not prohibit legitimation of children from an adulterous connection. We need not consider the question of the retrospective effect of the amendments. LSA-Civil Code Article 198 has no application in the instant case. Here petitioner was not born, in the words of the article, "out of marriage"; he was born during the existence of the putative marriage. The fact that his birth occurred almost immediately after the completion of the marriage ceremony is of no consequence. He was born "of" the marriage within the contemplation of LSA-Civil Code Article 118.
We have no doubt that a child is legitimated by the legal or putative marriage of its parents after its conception but prior to its birth. The identical question now before us was presented to the Supreme Court in Clendenning v. Clendenning, 3 Mart., N.S., 438. In that case a child was born within four months of the celebration of a putative marriage and the court held the child was entitled to all the rights of a legitimate child. In so holding, at page 439, the court said:
"It is, however, shown that the first child was born within four months *862 from the celebration of the marriage. This may be evidence of too much faith in the mother, but as a lawful marriage, cures an irregularity of this kind, a bona fide one on the part of the deceived woman, must have the same effect."
The judgment appealed from is affirmed.
Affirmed.