SARTAIN, Judge
(concurs in part and dissents in part).
I concur in that portion of the majority’s decision which affirms the trial judge’s ruling that Mrs. Arlene King Babineaux was in legal bad faith in her marriage to Mr. Cecyl Paul Babineaux and therefore not entitled to maintain a right of action under C.C. Art. 2315 for the death of Mr. Babi-neaux. However, I dissent from the majority’s decision which denies the oldest child, Paul Drake Babineaux, his right of action for his father’s death.
The facts in this case are not in dispute. Mr. and Mrs. Babineaux were married on April 25, 1960. At this time Mrs. Babi-neaux was still the legal wife of Roland C. Arnold because it was not until March 2, *229 1962 that Mr. Arnold obtained a divorce from her. Paul Drake Babineaux was born on August 7, 1960. The majority has concluded that under C.C. Art. 184 young Babi-neaux is the legal child of Mr. Arnold because at the time of his birth his mother was married to Arnold, notwithstanding the provisions of Arts. 117-118.
The pertinent articles provide:
C.C. Art. 117
“The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith.”
C.C. Art. 118
“If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage.”
and
C.C. Art. 184
“The law considers the husband of the mother as the father of all children conceived during the marriage.”
It is significant to me that Arts. 117-118 are the concluding articles of Title 4, Chapter 4 of the Civil Code on the subject “OF THE NULLITY OF MARRIAGES” and Arts. 184 et seq. are contained in Title 7, Chapter 2 dealing with the subject “OF LEGITIMATE CHILDREN” which legitimacy results from marriage.
The majority is correct in determining that the marriage between Mr. and Mrs. Babineaux is a nullity because at the time there was an impediment affecting Mrs. Babineaux’s freedom to marry. This nullity, however, does not prevent the marriage from being a putative one thus permitting the flow of civil effects therefrom. Arts. 117-118 expressly provide for instances where a subsequent marriage is in fact deemed a nullity. The thrust of defendants’ exceptions (adopted by the majority) deal with Mrs. Babineaux’s bad faith and not that of Mr. Babineaux. This ignores the fact that young Paul Drake Babineaux’s rights arise out of the death of his father whose good faith was not attacked nor put at issue.
The only evidence in the record that is probative as to any bad faith on the part of Mr. Babineaux is the testimony of Mr. Arnold who stated that either in 1959 or 1961 his then wife (Mrs. Babineaux) and Cecyl Paul Babineaux came to Baton Rouge to inquire as to the status of a pending divorce action between the Arnolds. This evidence is insufficient to brand Mr. Babi-neaux with bad faith. Following the purported marriage between the Babineauxs, four children were born each registered as the child of Cecyl Paul Babineaux and Arlene King Babineaux. The evidence of Mr. Arnold as to the Baton Rouge visit is insufficient to cast him as a bad faith party and under these conditions his good faith must be presumed.
I further suggest that the law in Louisiana is well settled to the effect that where one of the parties to the marriage is in good faith any children of that marriage are legitimate and entitled to the rights and benefits of a legitimate child.
The application of C.C. Art 184 in the instant matter is erroneous because Arts. 184 et seq., of necessity deal with a valid marriage and the premise that the husband of the mother is the father of all children conceived during his marriage is well founded. Nonetheless, we are talking about two entirely different sections of the Civil Code and Arts. 117-118 dealing specifically with marriages that have been decreed a nullity should be given the weight and authority they deserve.
The decision of the majority by accepting the presumption enunciated in Art. 184 denies the child the benefit of his true and legal filiation which is specifically granted to him under Art. 118.
The case of George v. Bertrand, 217 So.2d 47 (3d La.App., 1969, writs refused) relied on by the majority is distinguishable from the facts in the instant case because in Bertrand the good faith of Ruffin *230 George was not at issue. To the contrary the decedent’s mother and father lived together without the benefit of any marriage at the time of decedent’s conception and birth. Undoubtedly, Art. 118 was not considered because of the open concubinage between the decedent’s parents.
On the other hand, the case of Texas Company v. Stewart, 101 So.2d 222 (Orl.App., 1958, writs refused) holds that the presumption under Art. 184 must yield to the good faith grandfather and that under Art. 118 a granddaughter was the legitimate descendent of her good faith grandfather and not the legal descendent of Stewart, her “fictional” grandfather. In Stewart only one of the parties was in good faith but the issue of a subsequent bigamous marriage by virtue of that party’s good faith was decreed legitimate. This theory is well founded in law having been recognized in Miller v. Wiggins, 149 La. 720, 90 So. 109 (1921); Succession of Navarro, 24 La.Ann. 298 (1872) and the early authorities and French commentators therein cited. Later cases upholding the legitimacy of children born of putative marriages are Jones v. Equitable Life Assurance Society of United States, 173 So.2d 373 (1st La.App., 1965, writs refused) and Succession of Jene, 173 So.2d 857 (4th La.App., 1965).
For the above and foregoing reasons I believe that the decision of the trial court depriving the minor, Paul Drake Babi-neaux, of his right of action should be reversed.