## No. 2939.—SUCCESSION OF J. B. NAVARRO.

A marriage which has been declared to be null on account of an impediment in the way of one of the spouses, has nevertheless its civil fruits as to the other party who was in good faith and contracted the marriage in ignorance of the disabilities which affected the ·other, and also in favor of the issue of such marriage. C. C. 118.

Good faith in contracts being always presumed, the burden of proof falls upon the party who alleges fraud or bad faith. A wife who contracted a marriage with her husband in Louisiana in good faith, can not, therefore, be deprived of her interest in the succession of her husband, because it is afterward established that her husband at the time was the husband of a woman in the kingdom of Italy, by a marriage which took place prior to her marriage in Louisiana, nor can her children, the issue of such marriage, be deprived of their inheritance from their father's estate on that account.

APPEAL from the Second District Court, parish of Orleans. *Duvigneaud*, J. *G. Schmidt* and *Semmes & Mott*, for appellant. *L. Castiera, Carleton Hunt* and *A. L. Tissot*, for appellee.

LUDELING, C. J. This is a contest for the property of Jean Baptiste Navarro, who was a bigamist. He was married in his native country, ·Italy, in August, 1833, to Marie Massucco. He came to Louisiana in 1841, and in 1851 he was married by a justice of the peace in Louisiana, to Anastasie Lafrance, notwithstanding his first marriage was undissolved.

Anastasie died on or about the twelfth of January, 1869, and J. B. Navarro died on the twenty-first day of the same month and year. A son, Paul Augustin Navarro, issue of their marriage, survived them.

Marie Massucco died on the twenty-third of October, 1870. She left a will, whereby she constituted her brother Phillip Massucco and her sister Anna Maria Massucco, wife of J. B. Taggiasco, her heirs and universal legatees.

Navarro left property here inventoried at $20,759, and three parties now before the court present their claims to it.

Marie Massucco claims one-half of it as surviving widow in community, and her claim seems to be conceded to her in this court by both of the other parties.

Paul Augustin Navarro, by his tutor, claims the other half of the community, as the legitimate son of Jean Baptiste Navarro, while Mrs. Louisa Navarro Anselmi, sister of the said J. B. Navarro, claimed to be entitled to his entire succession, on the ground that he left neither ascendants nor legitimate descendants, nor collateral relatives besides herself. The court *a qua* decided that each of the two wives was entitled to one-half of the community, and rejected the demand of Mrs. Anselmi. From that judgment she alone has appealed.

The only question for decision is the legitimacy or illegitimacy of Paul Augustin Navarro, the issue of the putative marriage.

·The Civil Code provides that "The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith." Art. 117. "If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the child born of the marriage." Art. 118.

Good faith in contracts is always presumed; the onus of proof is on him who alleges fraud or bad faith. Rogron, Code Napoleon, expliqué liv. 1 Art. 201 Marcadé Droit Civil, vol. 1 tet. v. du marriage page 553.

After a careful examination of the evidence, we are satisfied that Anastasie acted in good faith in contracting the marriage with Navarro. Nothing in the record shows that she had ever heard, before her marriage, of his having a living wife in Europe. The justice of the peace, who performed the ceremony of marriage, and other male witnesses, who had lived a long time in the place where the marriage took place, had never heard of his having a living wife in Europe, and they believed him to be an unmarried man.

It seemed to be conceded in argument that it was not proved that she *knew before her marriage* that he had a wife in Europe, but it is insisted that this knowledge was communicated to her *after* the marriage, but before the conception of the child.

The only evidence on this subject is the testimony of the claimant,

Mrs. Anselmi, herself. She says "In conversation with my *brother's wife*, during my visit to the parish of Plaquemines, and *after the marriage*, my *sister-in-law*, Anastasia Lafrance, told me that she did not recognize myself and my mother as related to her. That her only relatives were on her mother's and father's side. I then stated to her: "You said we are not related to you, because you are aware that my brother is married in Italy, and if his wife comes here, this would not be at all agreeable to you." She then answered that she did not care. She says this conversation occurred "before the birth of the child is due from the marriage of my brother with Anastasie Lafrance." She can not fix the date of this conversation. She can not state whether it was a year or not after the marriage, nor how long after the marriage before the child was born.

Her memory is bad, and her testimony is vague and unsatisfactory.

If we were to give full credence to all she says, the evidence would fail to establish *knowledge* in Anastasie that her husband had another wife living in Europe. It certainly does not prove that such knowledge was acquired *before the conception* of the child. 3 N. S., 438, Clendenning *v.* Clendenning; 1 An., 105, Patton *v.* cities of Philadelphia and New Orleans; 7 An., 252, Hubbell *v.* Inskatein et al.; 15 An., 137, Abston *v.* Abston.

We see no reason for disturbing the judgment appealed from.

It is therefore ordered and adjudged that the judgment of the lower court be affirmed, with costs of appeal.