316 So.2d 366 (1975)
Edison L. KING
v.
E. A. CANCIENNE et al.
No. 55745.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
Sam J. D'Amico, D'Amico & Curet, Baton Rouge, for plaintiff-applicant.
Robert J. Vandaworker, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendants-respondents.
*367 BARHAM, Justice.
The issue before us is whether the right to bring a wrongful death action under La.C.C. art. 2315 is a civil effect of marriage, and may therefore be maintained by a good faith spouse. We determine that La.C.C. arts. 117 and 118 require that we answer the question affirmatively.
Plaintiff, Edison L. King, and Barbara Elizabeth Livingston had a marriage ceremony performed on July 14, 1971 in Orange, Texas. The bride had, on February 22, 1971, using the name of Pearl Elizabeth Hanks, married James Louis Holland in Orange, Texas, and thereafter had lived with Holland in Lake Charles, Louisiana until June 15, 1971. Thus King and his bride could not have been legally married for there was a legal impediment to the marriage. The trial court and the court of appeal correctly determined that the plaintiff, Edison L. King, had married the person known to him as Barbara Elizabeth Livingston in good faith without any knowledge of a bar to their marriage. Two weeks after plaintiff's marriage, Barbara was killed in an automobile accident when the car in which she and plaintiff were travelling was struck broadside by a vehicle operated by the defendant, William P. Cancienne. Both the trial court and appellate court found that the death of plaintiff's wife was caused by the negligence of William P. Cancienne. We concur in their finding.
The court of appeal affirmed the trial court's award of damages to plaintiff for his own injuries and its denial of any award to plaintiff for damages for the wrongful death of his wife. 303 So.2d 891 (La.App. 1st Cir. 1974). We granted writs to determine if the holding of Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 So. 926 (1907) that a putative spouse could not maintain an action for wrongful death under La.C.C. art. 2315 should be overruled. 307 So.2d 366 (La.1975).
Both the trial court and the court of appeal, in excellent written opinions, condemned the holding in the Vaughan case, but felt constrained to follow that holding, believing it proper to reserve to this Court the right to review that case and determine its validity and viability.
The article in the Code of 1808 which is the predecessor of our present La.C.C. art. 2315 adopted literally the French Projet du Gouvernement (1800), book III, title III, Art. 16, which provided for damages caused by the fault of another.[1] In the Code of 1825, however, we adopted without comment the provision of the Code Napole on of 1804, Article 1382, as our Article 2294[2] and this portion of present Article 2315 remains unchanged to date. In French law, under the same provision expressed in our Civil Code of 1825, anyone who was materially affected when the death of a person was the result of someone's fault, could demand reparation for the damage he suffered because of the death. 2 M. Planiol, Civil Law Treatise, *368 § 868 (La.St.L.Inst. transl.1959).[3] Generally, the French accord the right of indemnification to every person damaged through the fault of another; hence, there are as many indemnities as there are persons damaged. Under French law an action arising in favor of one injured is transferable to the heirs as a succession right, when the victim of the accident dies; further, any person suffering from the loss or disappearance of the victim by death has an independent right of action for his own loss.
In Rolland v. Gosse, 5 Nov. 1818, Sirey, Lois et Arrets (1815-1818) 540, the Cour de Cassation affirmed the holding of a court of Caen awarding damages to a widow whose husband had been killed partly through the fault of the defendant, Rolland. In Hubgh v. New Orleans and Carrollton Railroad Company, 6 La.Ann. 495 at 503 (1851), the Supreme Court of Louisiana, acting under Article 2294 of the Civil Code of 1825, discussed the Rolland case. The Court recognized that the French holding in that case followed the article of the French code as construed in the light of the ancient jurisprudence of France, which had for centuries permitted recovery for wrongful death. The court in Hubgh recognized that:
"* * * [T]he principle laid down in article 1382 (Code Napole on) is not new. It is drawn from the natural law; and long before the Napole on Code, the Roman laws had solemnly proclaimed it; long before that code, the French laws had recognized and assumed its existence. * * *" 6 La.Ann. at 511.
The Hubgh court, however, reasoned that although the Cour de Cassation decisions are correct, it does not follow that the Louisiana provision, although identical to the French, should be interpreted in the same manner as the French article. The Court concluded that ours was "a system of laws different from that prevailing in France,' and `that no civil action can be maintained under the common law by the relations, for the death of a free person." Then, examining Louisiana jurisprudence and finding that no suit for wrongful death had ever been brought under the Roman or Spanish laws, the Hubgh court held that this absence of litigation was sufficient to establish that such an action could not be maintained in Louisiana, absent legislative action. This common law solution to a civilian problem has been the subject of scholarly criticism.[4]
Although the discussions in brief and the comments of Chief Justice Eustis on rehearing are well stated and interesting, few, if any, present-day scholars would say that the comparison of Article 2294 of the Code of 1825 and Spanish law has little pertinence to the resolution of the question before the Court then. In adoption the Code of 1825, the legislature specifically repealed all Spanish law in conflict therewith. Attempts in 1827 by the Supreme Court of Louisiana[5] to revive any so-called former Spanish laws not contained in the Code were forever put to rest by act of 24 March, 1828.
Thus, the Hubgh court's rejection of the wrongful death action for the benefit of those who survived and who were damaged *369 by the absence of the deceased was based on an erroneous premise. The Court erred in using common law to support its decision and improperly rejected the interpretation by the Cour de Cassation of France under the identical provision, which was heavily sourced and indoctrinated in the prior French law. Moreover, the Hubgh decision in 1851 was contrary to the express legislative mandate in the adoption of the Code of 1825 and in Act 25 of 1828.
The legislature did respond in part to the Hubgh decision in Acts 1855, No. 223. That act provided that a right of action for damage caused the victim by the fault of another should survive in the case of death in favor of the minor children and the widow of the deceased, or either of them, or, in their absence, in favor of the surviving father and mother or either of them. Acts of 1884, No. 71 specifically provided a wrongful death action, i.e., an action for loss suffered by another for the death of a victim of a delict.[6]
Our Article 2315 is drawn directly from French law. The Hubgh case was decided under the exact language which prevailed in the French code. The purpose of that provision in France and in Louisiana was to provide an action for personal damage resulting from the death of another through the delictual action of a third party. The legal right and cause of action of one injured by loss of economic aid or love and affection was independent of any action which the deceased might have had and which would have passed to his heirs upon his death. Heirship and succession law has nothing to do with this independent action for a wrongful death. Hubgh was in error and the legislature in 1884 attempted to correct this error by naming certain survivors who could claim this independent right of action. Without deciding whether the survivors named are meant to be merely illustrative rather than exclusive, we pass to a consideration of whether that right of action may be claimed by a putative spouse.[7]
In Vaughan v. Dalton-Lard Lumber Co., supra, the Court first observed, in reliance upon Hubgh v. N.O. & C.R.R., supra, that under the La.C.C. of 1825, the right of action for personal injuries died with the victim, and that no action would lie for *370 damages suffered by another by reason of the victim's death. The Court then concluded that under the Code of 1825 the "* * * `civil effects' of marriage did not include the right of the survivor to maintain such actions." After discussing the amendments we have previously enumerated, the Court in Vaughan said:
"* * * The statute is sui generis, and is neither a law of inheritance nor a law of marriage. It provides for the survival of a right of action, and a distinct right of action, in favor of certain classes of persons. Those not included are excluded, and the article cannot be construed to confer the right upon persons not expressly mentioned in it. * * *" 43 So. at 927.
Finally, the Court there concluded the terms "widow" and "wife" contained in the statute had to be construed to mean the lawful surviving spouse. Because of a previous holding that the 1855 amendment specifying "wife" did not include a husband, the legislature, by Acts of 1918, No. 159, changed "widow" and "wife" to "surviving spouse." We, therefore, now have specifically listed among those who may maintain an action for wrongful death, the husband or wife of the deceased. We are of the opinion that the Vaughan case is in error and that its holding that "widow" and "wife" could only mean the "lawful wife" is in error.
The theory of putative marriages is based on the canonical law of France and has no Roman law source. Because many persons in good faith ran the risk of contracting null marriages, "* * * [a] palliative had to be found at any price." 1 M. Planiol, at 1094.
La.C.C. arts. 117 and 118 are contained in the chapter "Of the Nullity of Marriages." Article 117 provides:
"The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
Article 118 provides:
"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."
In Cortes v. Fleming, 307 So.2d 611 (La.1973), this Court declared the right to alimony to be a civil effect of a marriage which could be claimed by a putative wife when the marriage was declared null. In so doing, we stated:
"We have broadly construed the putative marriage provision of our Civil Code in favor of the children of the marriage and the parties in good faith in determining the civil effects of such a marriage. The jurisprudence has declared the following to be civil effects which flow from putative marriage: the legitimacy of the children. Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947); Succession of Gibson, 186 La. 723, 173 So. 185 (1937); Miller v. Wiggins, 149 La. 720, 90 So. 109 (1921); Texas Co. v. Stewart, 101 So.2d 222 (La.App. 4th Cir. 1958); the right of the putative wife to claim workmen's compensation from her husband's employer. Fulton Bag and Cotton Mills v. Fernandez, 159 So. 339 (La.App. 4th Cir. 1935). See also Jackson v. Swift and Co., 151 So. 816 (La.App. 2nd Cir. 1934); the right of the putative wife to her proportionate share of the community property. Texas Co. v. Stewart, supra; Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956); Succession of Fields, 222 La. 310, 62 So.2d 495 (1952); Succession of Chavis, supra; Patton v. City of Philadelphia and New Orleans, 1 La. Ann. 98 (1846); the right of the putative wife to inherit as a wife in the succession of her husband. Succession of Navarro, 24 La.Ann. 298 (1872); Kimball *371 v. Folsom, 150 F.Supp. 482 (D.C. 1957); the right of the putative wife to be considered as the "widow" under her husband's insurance policy. Jones v. Equitable Life Assurance Society of the United States, 173 So.2d 373 (La.App. 1st Cir. 1965); cert. denied, 247 La. 1019, 175 So.2d 302 (1965); the right of the putative wife to the marital portion, when she is otherwise qualified. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248 (1891)."
The simple import of the putative spouse provisions of La.C.C. arts. 117 and 118 is to cause civil effects of marriage to flow in favor of the party who marries in good faith and in favor of the children born of that marriage, as though the marriage had been legally consummated. Unless there is legal provision to the contrary, whatever benefit accrues to a legal spouse also accrues to the good faith spouse of a marriage which has been annulled or which is subject to nullity. Our La.C.C. arts. 117 and 18 were not contained in the original code of 1808; they were incorporated in the Civil Code of 1825 and reproduced articles 201 and 202 of the Code Napole on of 1804. Thus, in accord with the general purpose of the 1825 code, we brought our Civil Code more in line with the French civil code.
La.C.C. art. 2315 provides expressly that the surviving spouse is party who may maintain an action for damages suffered because of the loss by death of his spouse by the delicts of another. Just as we have held in numerous cases that "good faith spouse" is interchangeable with "spouse" or "widow," we are constrained to hold that, under the clear analysis of La.C.C. arts. 117 and 118, construed with La.C.C. art. 2315, the good faith spouse may maintain the wrongful death action provided for under La.C.C. art. 2315.
Along with the right to maintain the wrongful death action for his own loss, La.C.C. art. 2315 provides that a spouse may also inherit the rights of the deceased spouse, which accrued because of delictual acts before the spouse's death. Just as it is obvious under our previous holdings that a putative spouse could inherit the deceased spouse's right of action under La.C.C. art. 2315, it necessarily follows that a putative spouse may maintain an individual action for the personal damages suffered because of the loss of the deceased spouse. The right of action provided for by La.C.C. art. 2315 is a civil effect of marriage produced in favor of a good faith spouse. A contrary holding would run counter to the holding of Succession of Navarro[8] and our numerous cases discussed earlier, liberally construing the rights of putative spouses. We specifically overrule Vaughan v. Dalton-Lard Lumber Co., supra.
In connection with quantum, and in opposition to the rule just announced, it is argued that inequities will result if recovery by a putative spouse is allowed for the loss of one who has died as a result of the delictual acts of another. However, the measure of damages under La.C.C. art. 2315 is set forth explicity. Those who exercise the right of action for wrongful death may "recover the damages which they sustained" because of that death. Therefore, the measure of damages which can be apportioned to a plaintiff will depend upon the proof of the total loss to that plaintiff, whether it is based on economic deprivation, loss of love, loss of affection and companionship or other damage.
For the reasons assigned, we reverse the judgments of the court of appeal and the trial court and hold that plaintiff as a surviving putative husband of the deceased who was killed by the negligence of one of the defendants is entitled to recover the damages sustained. We remand the case to the court of appeal for the assessment of quantum.
Reversed and remanded.
*372 SANDERS, C.J., dissents and will assign, written reasons.
SUMMERS, J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
For more than sixty years, the courts have construed "surviving spouse" in Article 2315 of the Louisiana Civil Code to mean the surviving legal wife of the deceased. A wife whose marriage was unlawful, though putative, had no right of action. The basic decision was Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 So. 926 (1907). During this period, the Legislature met many times, but failed to amend the Article to broaden its beneficiaries.
Today, the majority overrules the prior jurisprudence and confers upon a putative wife a right and cause of action. In my opinion, the repudiation of the established law is unwarranted. In the absence of legislative amendment, I would adhere to the prior jurisprudence.
For these reasons, I respectfully dissent.
SUMMERS, Justice (dissenting).
This Court has emphatically declared that a putative wife has no right of action under Article 2315 to recover for the wrongful death of the person she believed to be her husband. The reason is that Article 2315 is sui generis and only those persons designated by the Legislature are entitled to entertain actions for wrongful death. Vaughan v. Dalton-Lard Lumber Co., 119 La. 61, 43 So. 926 (1907). Since the Legislature has not conferred a cause of action for wrongful death upon the putative wife of the decedent, this Court is without authority to do so.
I would adhere to the sound decision in Vaughan v. Dalton-Lard Lumber Co., supra.
NOTES
[1] Projet du Gouvernement (1800), Book III, Title III, Art. 16:

"Tout fait quelconque de 1'homme, qui cause a autrui un dommage, oblige celui, par la faute duqeul il est arrive, a le reparer, encore que la faute ne soit point de la nature de celles qui exposent a des peines de police simple on correctionnelle."
(Every act whatever of man, that causes damage to another, obliges him by whose fault it happened, to repair it, even though the fault be not of the nature of those which expose to the penalties of simple or correctional police).
[2] Article 2294, Civil Code of 1825:

"Tout fait quelconque de l'homme qui cause a autrui un dommage, oblige celui par la faute duqeul il est est [il est] arrive, a le reparer."
(Every act whatever of man, that causes damage to another, obliges him, by whose fault it happened, to repair it).
[3] E.g.:

(1) The employer could recover for damages caused by the death of one of his employees. (Paris, 27 Dec. 1926 and 6 July 1927, D.H.1927, 191 and 515).
(2) Support was due to those who received pecuniary did not only by reason of legal obligation, but even if that aid was given as a simple moral obligation. Occasionally, even the concubine recovered for her loss. (Paris, 5 June 1923, D.1924.-2.33; Montpellier, 24 June 1924, D.1924.-2.145; Paris, 12 June 1928, Gaz.Palais, 17 Aug.; Aix, 27 Oct. 1928, Ibid., 4 Dec.; Marseilles, 23 May 1929, Ibid., 20 June).
[4] Voss, The Recovery of Damages for Wrongful Death at Common Law, at Civil Law, and in Louisiana, 6 Tul.L.Rev. 201, 220 (1931).
[5] Lacroix v. Coquet, 5 Mart. (n.s.) 527 (La.1827); Flower v. Griffity, 6 Mart. (n.s.) 89 (La.1827).
[6] The present Article 2315 of the Code of 1870, after amendments in 1884, 1908, 1918, 1932, 1948 and 1960, reads in its totality;

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights, of the surviving spouse.
The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
As used in this article, the words `child', `brother', `sister', `father', and `mother' include a child, brother, sister, father, and mother, by adoption, respectively."
[7] We recognize that there is considerable jurisprudence to the effect that the wrongful death action is said to be "sui generis" in Louisiana and should be strictly construed. We pretermit comment upon this line of jurisprudence. "Spouse" is a named beneficiary of that action and we need only determine here if a "putative spouse" is included within that designation.
[8] 24 La.Ann. 298 (1872).