381 So.2d 396 (1980)
Alice C. ROCHE et al.
v.
BIG MOOSE OIL FIELD TRUCK SERVICE et al.
No. 65285.
Supreme Court of Louisiana.
February 15, 1980.
Rehearing Denied April 7, 1980.
*397 Thomas F. Porter, IV, Shelton & Legendre, Lafayette, for plaintiffs-applicants.
James R. Nieset, Plauche, Smith, Hebert & Nieset, Lake Charles, for defendants-respondents.
CALOGERO, Justice.
This is a wrongful death action by a surviving wife, individually and as tutrix of her adopted children, for the death of her husband and the children's prospective adoptive father who was killed while unloading a truck owned by Big Moose Oil Field Truck Services. Named as one group of defendants are the driver of the truck, Big Moose, and their insurer (the Big Moose defendants). A second group of defendants includes certain executive officers and employees of Fred Wilson Drilling Company and their insurer (the Fred Wilson defendants). We granted writs (375 So.2d 658 (La.1979)) to resolve the following issues:
1) Whether the minor children have a right of action for the wrongful death of decedent when the final decree of adoption was not rendered before his death.
2) Whether plaintiff under R.S. 23:1102 is required to intervene in the prior suit filed by the workman's compensation insurer against the tortfeasor rather than proceed in her own separate suit?
Plaintiff Alice C. Roche and the decedent Joseph Daniel Roche were married in 1968. They had no children. In 1974 the Juvenile Court for the Parish of Calcasieu decreed William David Robinson and Dawn Rochelle Robinson to be abandoned and awarded their custody to the Louisiana Health and Human Resources Administration for placement, in the best interest of the children. The children had been living with the Roches since April 21, 1972 as their foster children.
On December 2, 1976 Liberty Mutual Insurance Company, the workman's compensation insurance carrier for decedent's employer at the time of the death, filed suit in the Fifteenth Judicial District Court against the Big Moose defendants to recover compensation benefits paid. The next day the plaintiff individually and on behalf of the two minor children filed this wrongful death action, also in the Fifteenth Judicial District. Both sets of defendants filed exceptions. The trial court ruled that the minor children have no right of action because they were not adopted before Joseph Roche's death (on exceptions filed by both sets of defendants), that Act 147 of 1976 which abolished "executive officer" actions does not apply retroactively to this action (on exception of the Fred Wilson defendants alone), and that Mrs. Roche has no right or cause of action to file the present suit because her sole remedy is to intervene in the suit previously filed by the compensation insurer (on exceptions filed by both sets of defendants).
On appeal the Third Circuit affirmed the trial court's ruling that the minor children *398 have no right of action because they were not adopted at the time of decedent's death, and affirmed the dismissal of Mrs. Roche's action on the ground that R.S. 23:1102 requires that she intervene in the compensation insurer's previously filed suit.
That court also concluded that plaintiffs had not appealed from the August 10, 1978 ruling on the exception of the Fred Wilson defendants as to the children's right of action.[1]
To determine whether these minor children have a right of action for the wrongful death of Joseph Roche, we must examine Article 2315 of the Louisiana Civil Code which creates the survival and wrongful death actions and the classes of beneficiaries who in the order of preference may recover damages thereunder. The first class of beneficiaries includes "the surviving spouse and child or children of the deceased."
Adopted children were first included as beneficiaries by Acts 1948, No. 333, § 1 which amended Article 2315 to extend the right of action to children who were adopted. The article was again amended in 1960 to its present form to provide that the word child as used in that article includes a child "by adoption."[2] Whether we can find that the word child also includes a child for whom a petition of adoption has been filed but whose adoption is not final is the issue here.
In Bertrand v. State Farm Fire and Casualty Co., 333 So.2d 322 (La.App. 3rd Cir. 1976), an analogous situation was presented. There a mother had surrendered her minor child to the child's maternal grandparents for adoption. After an interlocutory decree but before a final decree of adoption, the child drowned. Both the child's mother and his maternal grandparents sued for damages for wrongful death. The Court of Appeal held that because the grandparents were not the mother and father of the child "by adoption" within the meaning of Civil Code Article 2315 (because the final decree of adoption had not been rendered), the child's mother rather than the prospective adoptive parents had the right of action under Article 2315.
*399 It is well-settled in the jurisprudence that the right of action created by Article 2315 may be extended only to the beneficiaries named in the statute and that the classes of beneficiaries must be strictly construed. As stated in Thompson v. Vestal Lumber Manufacturing Co., 16 So.2d 594 (La.App. 4th Cir. 1943), "Upon whom [the right of action] should devolve was a matter that peculiarly addressed itself to the Legislature. It has acted and the beneficiaries named may not be increased by judicial action."
In the instant case the minor children are not the "children" of the decedent "by adoption" within the meaning of Article 2315. Although they may have been dependent upon decedent for support and affection, they are neither his biological nor his adoptive "children." We therefore can not find that they have a right of action under Article 2315 for his death.
In brief plaintiffs present the following additional arguments:
1. That the minor children even if not the adopted children of decedent suffered no less than if their prospective adoptive father had died after the final decree of adoption than before because they were totally dependent upon him for income, support, guidance and affection;
2. That Mr. and Mrs. Roche had committed themselves twice through contract with the Department of Public Welfare to provide for the care and financial support of the children;
3. That the doctrine of equitable adoption which is recognized in some common law jurisdictions should be applied in this case. See In Re Williams, 10 Utah 2d 83, 348 P.2d 683 (1961); Bower v. Landa, 78 Nev. 246, 371 P.2d 657 (1962);
4. That the prospective adoptive children should be treated under the law at least as well as illegitimate children who in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), on remand 253 La. 73, 216 So.2d 818 (1968) were afforded the right to recover for the wrongful death of their mother upon whom they were dependent;
5. That the children should be treated as "posthumous children" who being born after the death of their father are accorded all the legal rights of legitimate children. See La.Code Civ. art. 29 which provides that "Children in their mother's womb are considered in whatever relates to themselves as if they were already born ...."
We have considered each of plaintiffs' arguments and try as we might to find a legal basis for holding that the minor children have a right of action, we can reach no other conclusion than that the arguments have no merit. None of these equitable considerations, separately or together, serve to make these children the adoptive children of decedent within the meaning of Article 2315. Furthermore the common law cases relying on the doctrine of equitable adoption (which cases represent only two of the common law jurisdictions) are of no assistance in the interpretation of Article 2315. The argument based on Levy v. Louisiana, supra, is also unpersuasive because the holding in that case was based on a finding that the restrictive interpretation of Article 2315 which excluded illegitimate biological children from the class of beneficiaries was invidiously discriminatory on the basis of birth. The children in the instant case are not decedent's biological children; therefore Levy is inapposite.
Plaintiffs' argument that the children should be treated just as would a decedent's posthumous children is possibly their best argument. While we recognize that there is some analogy between a fetus in its mother's womb which is born after the death of its father and a prospective adoptive child whose adoption had been petitioned for but which is scheduled to become final only a month after the prospective father's death, the rule that Article 2315 be strictly interpreted requires that we not expand the classes of beneficiaries by analogy. Moreover, the analogy between the two is a weak one. In the case of a fetus which subsequent to the father's death is born alive, the father can do nothing to prevent the child's birth or status, unlike *400 the present case in which the decedent Joseph Roche could have withdrawn his consent prior to the final adoption decree. Additionally the posthumous child's being born alive is unaffected by and unrelated to the event which gives rise to its Article 2315 rightsthe death of its father. The prospective adoptive child's claim, on the other hand, is directly related to and dependent upon the father's continued concurrence in the adoption, a matter affected by and in fact prevented by his pre-adoption death.
We must next consider the primary issue which prompted our grant of this writ: Whether Mrs. Roche, who does indeed have a right of action for the wrongful death of her husband, must intervene in the suit filed by the decedent's workman's compensation insurer.
The right of an employer or his compensation insurer to seek redress from a third person causing injury to an employee, for which the employee is entitled to compensation, is established by R.S. 23:1101, et seq. The first paragraph of R.S. 23:1101 recognizes that the exclusive remedy of the employee against his employer for employment related injuries does not affect that employee's right to seek damages from some person other than the employer for his injuries. That statute further provides that the employer may recover any amount which he has paid or has become obligated to pay as compensation to the employee or his dependents.[3]
Under R.S. 23:1102 if either the employer or the employee brings suit against a third person as provided by R.S. 23:1101, the other may intervene:
"If either the employee or his dependent, or the employer, brings suit against a third person as provided in R.S. 23:1101, he shall forthwith notify the other in writing of such fact and of the name of the court in which the suit is filed, and such other may intervene as party plaintiff in the suit." (emphasis provided)
Although that statute provides that the other party may intervene as a party plaintiff if either the employee or the employer brings suit against the third person, the jurisprudence holds that an employer's failure to intervene in a suit filed by the employee, after proper notice, bars the employer from bringing a separate suit against the third party tortfeasor. Todd-Johnson Dry Docks v. City of New Orleans, 55 So.2d 650 (Orl.La.App., 1951); Marquette Casualty Company v. Brown, 235 La. 245, 103 So.2d 269 (1957); National Surety Corporation v. Standard Accident Insurance Company, 247 La. 905, 175 So.2d 263 (1965). No case however has held that an employee's timely filed suit must be dismissed if the employer has pending a previously filed suit for reimbursement of compensation paid.
In Todd-Johnson Dry Docks, Inc. v. City of New Orleans, supra, the court held that an employer's failure to intervene in an employee's previously filed action bars the employer's claim for reimbursement of the benefits paid. That court reasoned that R.S. 23:1102 does not create a "new, independent action based on the compensation paid. [Citations omitted] All that statute *401 does is recognize the fact that as a result of Article 2315 of our Civil Code, an injured employee may collect damages from the third party tortfeasor, and that if he is entitled to such damages the employer may, by pursuing the proper course of action, obtain out of those damages the amount for which he is liable in compensation." That court recognized that it is the employee's cause of action under Article 2315 and that the employer's action is only incidental thereto and only for the amount he has paid in compensation.
Respondent in brief relies upon language in National Surety Corporation v. Standard Accident Insurance Company, supra, to argue that the issue of whether an employee must intervene is settled. In that case the issue presented was whether a suit by a compensation insurer against the third party tortfeasor interrupted prescription as to a suit filed by the employee more than one year after the accident. There we held that because there is only one cause of action from which both the employee and employer's claim arise, there could be only one prescriptive period and that it was interrupted by the timely filing of suit by the employer. The Court, however, in passing stated:
"LSA-R.S. 23:1101, 23:1102, 23:1103, supra, do not set forth whether the injured employee or employer or the employer's insurer shall sue first; when one files suit, however, the other, if he desires recovery must intervene. The intervention is incidental despite that it is filed by the employee. Article 1031, LSA-Code of Civil Procedure, supra." (Emphasis provided)
Although we there stated that the employee's action is "incidental" and that when either the employee or the employer has filed suit first, the other, if he desires recovery, must intervene, that language was unnecessary to our holding and therefore dicta. While the observation that the employee's action was incidental may be relevant to whether prescription was interrupted, it does not bear on the issue of whether a timely filed action by an employee may be dismissed because of a previously filed action of the employer.
One apparent purpose for preferring to require intervention of an employer or an employee into a lawsuit previously filed by the other is to prevent the third party tortfeasor from having to defend two separate lawsuits based on the same delictual and quantum facts. As suggested by the Court of Appeal another reason for allowing intervention is to protect the employer from losing his right to indemnification in the event of a lawsuit by the employee against the tortfeasor. While each of these is a valid purpose, neither is sufficient to require an employee, to whom the cause of action accrues under Article 2315 and who under R.S. 23:1101 has a tort claim, to intervene in an earlier filed action by the employer. It is the employee or his statutory beneficiaries who have suffered the full loss compensable under Article 2315, not the employer. The employer's right is only a statutory one under R.S. 23:1101 for reimbursement of compensation paid or payable out of the employee's damage claim.
In a case such as this in which the employer filed suit first (December 2, 1976) and the employee chose to file a separate lawsuit (only one day later), if one of the lawsuits has to be dismissed, it makes more sense that it be that of the employer. While many employees may choose simply to intervene where a lawsuit has already been filed by the employer, the employee who timely files a separate action should not be required to do so, and indeed is not required to do so under R.S. 23:1102 which provides simply that either party may intervene. If an employee files suit for damages from the third party tortfeasor, an employer seeking reimbursement of compensation paid must intervene in the pending lawsuit, as per Todd-Johnson, supra, and as per the dicta in National Surety, supra. That jurisprudence as it relates to the employer's second filed suit is unaffected by our decision here. We hold in this case that if an employer files suit first, the employee may still maintain a separate action for his damages and need not intervene in the employer's *402 pending lawsuit. All that we must do, and are doing here, to resolve the legal issue before us is to find that the trial court erred in dismissing Mrs. Roche's timely suit filed separately from the earlier filed employer suit. Her suit should not have been dismissed, be it with or without prejudice.
We are mindful that our holding in this case coupled with the incongruity of R.S. 23:1101's recognition of rights of both the employer and the employee, and R.S. 23:1102's provision for permissible intervention may result in multiple lawsuits involving single claims. Because in the instant case both the employer and the employee's claims were timely filed in the same district court (the Fifteenth Judicial District Court), consolidation of the two lawsuits and treatment of the employer's action as an intervention will solve the problem in this case.[4]
And while we are tempted to prescribe a procedural solution in the situation in which two lawsuits are filed in two different courts, each of proper venue,[5] we conclude that such resolution would be dicta here and legislative in nature. It is therefore best left to the Legislature to solve this problem.[6]

Decree
For the foregoing reasons the judgments of the district court and the Court of Appeal are affirmed insofar as they dismissed the action brought on behalf of the minor children; the judgments of the district court and the Court of Appeal dismissing Mrs. Roche's action and requiring her to intervene in the previously filed lawsuit of Liberty Mutual are reversed and the two lawsuits No. 40,722 and No. 40,732 in the Fifteenth Judicial District Court are ordered consolidated. The case is remanded to the district court for further proceedings consistent with this opinion.
JUDGMENTS AFFIRMED IN PART; REVERSED IN PART; REMANDED.
MARCUS, J., concurs and assigns reasons.
DENNIS, J., concurs in part and dissents in part and assigns reasons.
MARCUS, Justice (concurring).
In my view, it is inconsistent to hold that, if an employee files suit for damages against a third party tort feasor, an employer seeking reimbursement of compensation must intervene in the pending lawsuit, yet where an employer files suit first, the employee may still file a separate action for damages and need not intervene in the employer's pending suit. Accordingly, I respectfully concur.
DENNIS, Justice, dissenting in part and concurring in part.
I respectfully dissent from the majority's opinion that the children have no cause of action.
I question whether 2315's listing of wrongful death beneficiaries is exclusive thereby denying these children recovery. In the case of King v. Cancienne, 316 So.2d 366 (La.1975) we held that a putative *403 spouse would not be deprived of recovery under 2315 for the wrongful death of her putative husband even though she did not technically fit within any of the categories of 2315. As a partial basis for the decision, Justice Barham outlined the history of wrongful death in Louisiana and in France. He noted that "Under French law ... any person suffering from the loss or disappearance of the victim by death has an independent right of action for his own loss." King, supra, 316 So.2d at 368. He observed:
"Our Article 2315 is drawn directly from French law.... The purpose of that provision in France and in Louisiana was to provide an action for personal damage resulting from the death of another through the delictual action of a third party. The legal right and cause of action of one injured by loss of economic aid or love and affection was independent of any action which the deceased might have had ...." King, supra, 316 So.2d at 369.
In King, the issue of whether the listing of beneficiaries in 2315 is exclusive or illustrative was recognized but not addressed. It has been long held that the article must be strictly construed and that, therefore, the listing must be exclusive. See Chatman v. Martin, 245 So.2d 423 (La.App. 2d Cir. 1971) and the authorities cited therein. However, the basis for this ruling is faulty. While in France the wrongful death action was recognized, the Common Law of England maintained that the death of a human being did not create a cause of action on behalf of a living person injured because of the death. However, in 1846 Lord Campbell's act was passed giving such a cause of action in limited circumstances. This provision being statutory law, it was in derogation of the common law and as such fell under the rule of requiring strict construction. Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1, 4-6 (1976). However, our legal background and traditions are civilian. As Professor Johnson astutely commented,
"Article 2315 is not in derogation of common law; it is not in derogation of anything. There was no reason at all to adopt the common law maxim of strict interpretation of statutes which departed from the common law. And yet, for years and years, the Louisiana jurisprudence has confidently concluded that the article has to be strictly construed, when in fact there is no reason to interpret the article in a different fashion from any other article or statute." Johnson, supra, 37 La.L.Rev. at 7.
Because of the wrongful act of another the children in the present case were injured. They were deprived of support, love and affection, and of a father. Although they may not fit technically within any of the present categories of 2315 I believe that an examination of the purpose of the statute would require that person who caused the damage to repair it.
Moreover, the majority's interpretation of Article 2315 renders it unconstitutional.
Although I appreciate the difficulty in conceptualizing a class including the children, it seems to me that dependent minors undergoing virtually certain adoption, absent the death of the adoptive parent, do form a legitimate category deserving of equal protection of the lawsat least as deserving as independent major illegitimate children who may have never known their deceased parent. If the majority's interpretation of Article 2315 is correct, it arbitrarily, capriciously or unreasonably discriminates against the prospective adopted children because of their birth, La.Const. Art. 1, § 3, there being no rational basis to support such discrimination.
I join fully in the balance of the majority opinion.
NOTES
[1] The issue of whether the plaintiffs had appealed the ruling on the Fred Wilson defendants' exception arose in the following context: All of the exceptions of both sets of defendants were heard on May 1, 1978. On July 31, 1978, the district court judge rendered written reasons for judgment. Pursuant to the written reasons rendered July 31, 1978, the court rendered and signed a judgment on August 10, 1978 in favor of only the Fred Wilson defendants, sustaining their exception of no right of action as to the minor children but overruling their exception as to the retroactive effect of Act 147 of 1976. On October 9, 1978, a separate judgment was rendered sustaining both exceptions urged by the Big Moose defendants.

On November 3, 1978 plaintiffs obtained an order for an appeal from the judgment "rendered herein on July 31, 1978 and read and signed in Chambers on October 9, 1978." Plaintiffs' motion and order for appeal did not specifically mention the judgment rendered on August 10, 1978 on the Fred Wilson defendants' exceptions.
In the Court of Appeal the Fred Wilson defendants argued that the plaintiffs simply did not appeal from the trial court's judgment of August 10, 1978 which had dismissed the claims of the two children against them. They argued that because plaintiffs obtained an order for appeal from the judgment rendered October 9, 1978 and because the order did not mention the August 10, 1978 judgment rendered on their exception, that judgment (August 10, 1978) was final. The Court of Appeal determined that although it may have been the intention of plaintiffs to appeal both judgments (August 10, 1978 and October 9, 1978), they simply had not done so since the order of appeal only specified the October 9, 1978 judgment.
The Court of Appeal in expressing that there was no need for briefs by the Fred Wilson defendants on the merits of the right of action of the minor children, related that they were holding the August 10, 1978 judgment was not appealed. That resolution, or "holding," was not necessary to the decision since the trial court judgment maintaining the exceptions of no right of action of the minor children was affirmed. So, too, for the purpose of our review, it is unnecessary to resolve the procedural question of whether plaintiffs timely appealed the August 10, 1978 judgment maintaining the exception of no right of action urged by the Fred Wilson defendants.
[2] Article 2315 as amended in 1960 provides in pertinent part:

"As used in this article, the words `child', `brother', `sister', `father', and `mother' include a child, brother, sister, father, and mother, by adoption, respectively."
[3] Louisiana Revised Statute 23:1101 provides:

"When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as third person) other than those persons against whom the said employee's rights and remedies are limited in Section 1032 of this Chapter, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, or compensable sickness or disease.
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to such employee or his dependents."
[4] Consolidation of two separate suits involving a common issue of law or fact pending in the same court is provided under Article 1561 of the Code of Civil Procedure:

"When two or more separate suits involving a common issue of law or fact are pending in the same court, the court, at any time prior to trial, may order the consolidation of the suits for trial or may order a joint trial of any of the common issues."
[5] For instance one solution might be to provide that where the employer's statutory claim for compensation reimbursement is first filed, a suit filed by the employee within the prescriptive period in a court of proper venue shall not be subject to being dismissed on exceptions and shall not be affected by the disposition of the employer's suit. The employer's earlier filed suit in this latter instance might, however, be subject to being transferred and consolidated with the employee's suit as though it were an intervention. For a comparable provision to transfer from one district court to another see Article 123 Code of Civil Procedure.
[6] The problem is caused by R.S. 23:1101's recognition of distinct claims of the employer and the employee arising out of a single accident and R.S. 23:1102's provision that either the employer or the employee may rather than must intervene in the earlier filed lawsuit.