512 So.2d 352 (1987)
Max NATHAN, Jr., in his Capacity as the Executor of the Succession of Herbert Nathan and in his Individual Capacity as an Heir or Legatee of Herbert Nathan
v.
TOURO INFIRMARY; the Board of Managers of Touro Infirmary; and Gordon P. Nutik, M.D.
No. 87-C-0635.
Supreme Court of Louisiana.
September 9, 1987.
Rehearing Denied October 29, 1987.
Camilo Salas, III, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for applicant.
Harold Thomas, Robert Ford, Lemle, Kelleher, Kohlmeyer, Dennery, Moss & Frilot, H. Martin Hunley, New Orleans, for respondents.
DIXON, Chief Justice.
The present action involves damages suffered by Herbert Nathan as a result of alleged malpractice committed by Dr. Gordon P. Nutik and Touro Infirmary during treatment for a broken hip in September and October, 1983. On October 10, 1984, Herbert Nathan filed a malpractice complaint with the Medical Review Panel as required by the Medical Malpractice Act prior to filing suit against a health care provider covered by the act. R.S. 40:1299.47.[1] The Medical Review Panel rendered an opinion on July 17, 1985. Herbert Nathan died on August 5, 1985 of causes not related to the alleged malpractice, leaving no spouse or children, parents or siblings to survive him. On August 26, 1986, Max Nathan, Jr. was appointed as the executor of the Succession of Herbert Nathan. On October 14, 1985, within the statutory ninety day limit allowed to timely file suit after the review panel has rendered its opinion, Max Nathan, Jr. filed a suit entitled "Max *353 Nathan, Jr., in his Capacity as the Executor of the Succession of Herbert Nathan v. Touro Infirmary; the Board of Managers of Touro Infirmary; Gordon P. Nutik, M.D.; Jane Doe and Bob Doe," No. 85-17564. On November 21, 1985, Max Nathan, Jr. filed a supplemental and amending petition in suit No. 85-17564, contending that since he is an heir or legatee of Herbert Nathan, he is also entitled to prosecute the suit in that capacity. Defendants filed exceptions of no right of action contending that only those individuals included in the limited list of beneficiaries in C.C. art. 2315 are entitled to assert a claim for Herbert Nathan's injuries and as Max Nathan, Jr. was not a spouse, child, parent or sibling of Herbert Nathan, he lacked the requisite relationship to the decedent to assert the C.C. art. 2315 survival action. The district court granted the exception and the court of appeal affirmed, treating the suit as "... one instituted by the legatee-succession representative after the decedent's death, ..." Nathan v. Touro, et al., 501 So.2d 252, 255.
Max Nathan, Jr. applied for writs, arguing that Herbert Nathan's action to recover damages for his injuries allegedly resulting from malpractice was commenced prior to his death by his filing with the Medical Review Panel, and this action did not abate upon his death. This action was a property right that was transmitted upon his death to his heirs or legatees, and Max Nathan, Jr. is the proper party to prosecute this suit. Also, it is claimed that under a proper interpretation of C.C. art. 2315 following French precedent, there is no limitation in the classes of individuals who may prosecute an action under C.C. art. 2315. We granted writs to resolve the issue of whether a succession representative as plaintiff may continue a C.C. art. 2315 personal injury suit brought by a victim who died without surviving beneficiaries designated in C.C. art. 2315.[2]
We first determine that the medical malpractice action was in fact commenced by Herbert Nathan prior to his death. R.S. 40:1299.47(B)(1)(a)(i) provides:
"No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section."
Filing a complaint with the review panel is a mandatory initial step in a malpractice claim and a requirement before filing suit "in any court." Therefore, the filing with *354 the panel was equivalent to the filing of a suit and for present purposes was actually the commencement of the suit. The legislature acknowledged this relationship and provided that the filing of the request for a review of a claim suspended the running of prescription, R.S. 40:1299.47(A)(2)(a), just as the filing of a suit in a competent jurisdiction suspends the running of prescription.
We next determine whether Herbert Nathan's action abated upon his death or whether it was a property right. C.C.P. art. 428 states:
"An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly personal."
Comment (b) provides in part:
"... If the plaintiff has elected to enforce a right of action by instituting suit thereon, then his heirs, or his survivors under the amended Art. 2315 of the Civil Code, have the right to continue its prosecution, if the plaintiff dies."
Thus, the code clearly provides generally that Herbert Nathan's action does not abate upon his death unless it is "strictly personal." In Guidry v. Theriot, 377 So.2d 319, 323 (La.1979), we found that a victim's action for recovery of tort damages is not strictly personal and that C.C.P. art. 428 legislatively overruled "the jurisprudence which had adopted the common law rule that a tort action abates on the death of the victim." We specifically reaffirmed J. Wilton Jones Co. v. Liberty Mutual Insurance Co., 248 So.2d 878 (La.App. 4 Cir. 1971), which held that a victim's action to recover tort damages is not strictly personal, and is inherited by the beneficiary's heirs upon the beneficiary's death. See Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1, 52 (1976).
C.C.P. art. 426 provides:
"An action to enforce an obligation is the property of the obligee which on his death is transmitted with his estate to his heirs, universal legatees, or legatees under a universal title, except as otherwise provided by law. An action to enforce an obligation is transmitted to the obligee's legatee under a particular title only when it relates to the property disposed of under the particular title.
These rules apply also to a right to enforce an obligation, when no action thereon was commenced prior to the obligee's death."
In Turner v. Southern Wheel and Rim Service, Inc., 332 So.2d 770 (La.1976), we had concluded that C.C.P. art. 428 and C.C.P. art. 426, the general principles regarding abatement of actions, were applicable to a worker's compensation claim; we held that the right of an obligee to enforce an obligation is his property that is transmitted upon his death to his heirs or legatees even where the obligee did not commence an action thereon, unless the obligation sought to be enforced is strictly personal. Under these statutory and jurisprudential authorities, Herbert Nathan's claim for damages for medical malpractice did not abate on his death.
Max Nathan, Jr. argues that as succession representative he is the legal successor to the decedent's property rights, including this instituted action, and, as such, he has a right of action. Defendants argue that under C.C. art. 2315 only the listed beneficiaries may assert Herbert Nathan's survival action. C.C.P. art. 801 provides:
"When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion supported by proof of his quality.
As used in Articles 801 through 804, `legal successor' means:
(1) The survivors designated in Article 2315 of the Civil Code, if the action survives in their favor; and
(2) Otherwise, it means the succession representative of the deceased appointed by a court of this state, if the succession is under administration therein; or the heirs and legatees of the deceased, if the deceased's succession is not under administration therein."
In J. Wilton Jones Co. v. Liberty Mutual Insurance Co., supra at 892, the court of *355 appeal found that C.C.P. art. 801 required the interpretation that "... if, i.e., in the case that, the action devolves on art. 2315 survivors, which is every tort personal injury action, then the survivors may have themselves substituted. `Otherwise', namely in every tort property damage action, every contract and every property casewhere the action does not survive in favor of art. 2315 beneficiaries  the succession representative or heirs may be substituted." The court of appeal included no rationale for this interpretation which was followed in Henry v. State of Louisiana, Through the Department of Health and Human Resources, 435 So.2d 565, 568 (La. App. 3 Cir.1983). Henry quoted Roche v. Big Moose Oil Field Truck Service, 381 So.2d 396 (La.1980): "`It is well-settled in the jurisprudence that the right of action created by Article 2315 may be extended only to the beneficiaries named in the statute and that the classes of beneficiaries must be strictly construed ....'" Roche is inapplicable to the case at bar because it was a wrongful death action urged on behalf of minor children whose adoption had not been completed at the time of the fatal accident. Here, because Herbert Nathan instituted this action and asserted his claim before his death, his "right" of action has been transformed into an "action." Once the suit was instituted, the "right to recover" of C.C. art. 2315 had already been asserted by the victim according to the provisions of the malpractice statute. We also disagree with the Jones' court interpretation of C.C.P. art. 801. The "Otherwise" in that article can reasonably be read to cover situations where not only is there not a C.C. art. 2315 personal injury suit but also no C.C. art. 2315 beneficiaries in existence. If there are C.C. art. 2315 beneficiaries in existence, they are the legal successors. If there are no C.C. art. 2315 beneficiaries, the legal successor is either the succession representative or the heirs, depending on whether the estate is under administration. In the Official Comments to C.C.P. art. 801, comment (b) explains that C.C.P. art. 801 was amended so as to avoid any possible conflict with any of the provisions of Article 2315 of the Civil Code, as amended in 1960. Our interpretation creates no contradiction; the wording of C.C.P. art. 801 clearly shows that C.C. art. 2315 beneficiaries are to be given first preference in the definition of "legal successor."
In Guidry v. Theriot, supra, we stated that there is a significant difference between inheriting an instituted action and inheriting the right to institute an action. In Guidry, we held that once an action has been instituted under C.C. art. 2315, the one year prescriptive period of that article no longer applies to the survival action, but rather the nonabatement and substitution provisions of the Code of Civil Procedure control. A logical extension of the holding in Guidry is that if the C.C. art. 2315 prescriptive period no longer applies once the suit has been instituted, neither does the limitations of beneficiaries. C.C. art. 2315 includes the phrases "right to recover" and "right of action." Here, the victim has already asserted his right to recover so there is no need to provide who will inherit his right to the action. The victim himself has made this decision by instituting suit, creating a property right which is heritable even if there are no C.C. art. 2315 beneficiaries in existence.
This interpretation of Code of Civil Procedure Articles 426, 428 and 801 and their application to personal injury actions is supported by the historical review of the origins of C.C. art. 2315 in King v. Cancienne, 316 So.2d 366 (La.1975), where we concluded that a putative spouse may maintain the wrongful death action provided for in C.C. art. 2315. In King, we stated that our article 2315 was drawn directly from French law and was misinterpreted in Hubgh v. New Orleans and Carrollton Railroad Co., 6 La.Ann. 495 (1851), where it was held that, since there was no wrongful death action under common law, such an action could not be maintained in Louisiana. In King v. Cancienne, supra at 369, we said:
"... The Hubgh case was decided under the exact language which prevailed in the French code. The purpose of that provision in France and in Louisiana was *356 to provide an action for personal damage resulting from the death of another through the delictual action of a third party. The legal right and cause of action of one injured by loss of economic aid or love and affection was independent of any action which the deceased might have had and which would have passed to his heirs upon his death...."
Under French law an action arising in favor of one injured is transferable to the heirs as a succession right when the victim of the accident dies. King v. Cancienne, supra at 368.
Therefore, the lower courts erred in sustaining the exceptions of no right of action, and their judgments are reversed, the exceptions are overruled, and the case is remanded to the district court for further proceedings.
LEMMON, J., concurs.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
I agree with the result reached by the majority. Because Herbert Nathan instituted this action before his death, La. Code Civ.P. art. 801 applies. Max Nathan, Jr. is his "legal successor" under art. 801(2) and may be substituted for the deceased party because there are no La.Civ.Code art. 2315 survivors. If, however, Herbert Nathan had not instituted this action before his death, then La.Civ.Code art. 2315(D)(1) would apply and Max Nathan, Jr. would not have been able to institute this action because he is not an art. 2315 survivor. Accordingly, I respectfully concur.
NOTES
[1] On this same date, October 10, 1984, Herbert Nathan filed suit No. 84-16883 entitled "Herbert Nathan v. Touro Infirmary, et al" to insure that prescription on his claim would be interrupted and would not expire before the medical review panel rendered its opinion. This suit is not before this court at the present time.
[2] At the time this action was filed, C.C. art. 2315 read:

"A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
C. (1) The right to recover damages to property caused by an offense or quasi-offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
(2) As used in this Paragraph, property damages may include expenses or monetary obligations necessarily incurred by the obligee on account of such offense or quasi-offense; however, if the obligee is survived by any beneficiary enumerated in the following Paragraph of this Article, such expenses or obligations shall be recoverable by said beneficiaries.
D. (1) The right to recover all other damages caused by an offense or quasi-offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of:
(a) The surviving spouse and child or children of the deceased, or either such spouse or such child or children;
(b) The surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and
(c) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
(2) The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased.
(3) A right to recover damages under the provisions of this Paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
E. As used in this Article, the words `child', `brother', `sister', `father', and `mother' include a child, brother, sister, father, and mother, by adoption, respectively."